Armen Shaghzo, Esq. [SBN 178802]
Alenoush Shaghzo, Esq. [SBN 187837]
SHAGHZO & SHAGHZO LAW FIRM, LP
100 W. Broadway, Suite 540
Glendale, CA 91210
Tel: 818-241-8887
Fax: 818-241-0035
Email: as@shaghzolaw.com; alenoush@shaghzolaw.com

Naira Zohrabyan, Esq. [SBN 337925]
ZOHRABYAN LAW, APC
100 W. Broadway, Suite 540
Glendale, CA 91210
Tel: 323-246-3284
Fax: (747) 327-4059
Email: naira@zohrabyanlaw.com

Attorneys for Claimant SEDRAK ARUSTAMYAN

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>REAL PROPERTY IN LOS ANGELES, CALIFORNIA<br><br>Defendant. | CASE NO. 2:22-CV-02902-jls-pd<br><br>**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM** |
| SEDRAK ARUSTAMYAN<br><br>Counter-Claimant,<br>vs.<br><br>UNITED STATES OF AMERICA<br><br>Counter-Defendant. | [Assigned for all purposes to the Hon. Josephine L. Staton] |

1

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

SEDRAK ARUSTAMYAN

Cross-Claimant,

vs.

ARTYOM KHACHATRYAN,
GURGEN KHACHATRYAN

Claimants.

Here comes the Counter Claimant/Cross-Claimant SEDRAK ARUSTAMYAN (hereinafter "ARUSTAMYAN") and hereby files his Answer pursuant to SUPPLEMENTAL RULE G (5)(b) , Affirmative Defenses, Counter Claim, and Cross-Claim to Plaintiff's Verified Complaint for Forfeiture In Rem (hereinafter "Complaint").

## ANSWER

1. ARUSTAMYAN Admits the allegations in paragraph 1 of the Complaint based upon information and belief.

2. ARUSTAMYAN Denies the allegations in paragraph 2 of the Complaint.

3. ARUSTAMYAN Admits the allegations in paragraph 3 of the Complaint based upon information and belief.

4. ARUSTAMYAN Admits the allegations in paragraph 4 of the Complaint based upon information and belief.

5. ARUSTAMYAN Admits the allegations in paragraph 5 of the Complaint, based upon information and belief.

6. ARUSTAMYAN Admits the allegations in paragraph 6 of the Complaint, based upon information and belief.

7. ARUSTAMYAN Admits in part and Denies in part the allegations in paragraph 7 of the Complaint. ARUSTAMYAN Admits that he is a prominent businessman in Armenia. ARUSTAMYAN Admits that he was

2

an executive officer for Yerevan's Ararat Cognac-Wine-Vodka Factory, Ecofish Trade Ltd, Jermuk Turboshin. Ltd, and Raps. ARUSTAMYAN Denies all other allegations in paragraph 7 of the Complaint and Denies that he has paid bribes to KHACHATRYAN or anyone else in violation of Article 312 of the Criminal Code of the Republic of Armenia.

8. ARUSTAMYAN lacks sufficient knowledge or information and as such ARUSTAMYAN Denies said allegations.

9. ARUSTAMYAN Admits in part and Denies in part the allegations in paragraph 9 of the Complaint. ARUSTAMYAN Admits that Veto Trust was formed under the laws of California by an agreement dated May 11, 2011. ARUSTAMYAN Denies the allegations in paragraph 9 of the Complaint that provides that the Veto Trust purchased the Veto Estate with unlawful bribes paid by ARUSTAMYAN.

10. ARUSTAMYAN Admits the allegations in paragraph 10 of the Complaint, based upon information and belief.

11. ARUSTAMYAN Admits the allegations in paragraph 11 of the Complaint, based upon information and belief.

12. ARUSTAMYAN lacks sufficient knowledge or information to Admit or Deny the allegations in paragraph 12 of the Complaint, and based thereon Denies said allegations.

13. ARUSTAMYAN lacks sufficient knowledge or information to either Admit or Deny the allegations in paragraph 13 of the Complaint, and based thereon Denies said allegations.

14. ARUSTAMYAN lacks sufficient knowledge or information to either Admits or Deny the allegations in paragraph 14 of the Complaint, and based thereon Denies said allegations.

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

15. ARUSTAMYAN Denies the allegations in paragraph 15 of the Complaint in that there are no acts or omissions that give rise to a forfeiture action.

16. ARUSTAMYAN Admits the allegations in paragraph 16 of the Complaint, based upon information and belief.

17. ARUSTAMYAN Admits the allegations in paragraph 17 of the Complaint, based upon information and belief.

18. ARUSTAMYAN Admits in part and Denies in part the allegations in paragraph 18 of the Complaint. ARUSTAMYAN Admits that KHACHATRYAN was appointed minister of finance as alleged in the paragraph 18 of the Complaint, based upon information and belief. ARUSTAMYAN lacks sufficient knowledge or information as to whether or not KHACHATRYAN was known as the "Super Minister" and as such ARUSTAMYAN Denies said allegations.

19. ARUSTAMYAN Admits the allegations in paragraph 19 of the Complaint, based upon information and belief.

20. ARUSTAMYAN Admits in part and Denies in part  the allegations in paragraph 20 of the Complaint. ARUSTAMYAN Admits that he was chief executive officer at Yerevan's Ararat Cognac-Wine-Vodka Factory, Ecofish Trade Ltd, Jermuk Turboshin. Ltd, and   Raps. However, ARUSTAMYAN Denies the allegations as to other Armenian Entities referenced in paragraph 20 of the Complaint.

21. ARUSTAMYAN Denies the allegations in paragraph 21 of the Complaint.

22. ARUSTAMYAN Denies the allegations in paragraph 22 of the Complaint.

23. ARUSTAMYAN Admits in parte and Denies in part the allegations in paragraph 23 of the Complaint. ARUSTAMYAN Admits that he entered into a Loan Agreement ("Loan-1") on approximately July 9, 2009, as set

4

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

forth in paragraph 23 of the Complaint.  However, ARUSTAMYAN Denies that Loan-1 was a sham as alleged in paragraph 23 of the Complaint.

24.  ARUSTAMYAN Admits the allegations in paragraph 24 of the Complaint, based upon information and belief.

25.  ARUSTAMYAN Admits in part and Denies in part the allegations in paragraph 25 of the Complaint.  ARUSTAMYAN Admits that he entered into an agreement to extend Loan-1's repayment date as alleged in paragraph 26 of the Complaint.  ARUSTAMYAN Denies that he did not receive any consideration for the extension of Loan-1's repayment date, as alleged in paragraph 25 of the Complaint.

26.  ARUSTAMYAN Admits in part and Denies in part the allegations in paragraph 26 of the Complaint.  ARUSTAMYAN Admits that he entered into a Loan Agreement ("Loan-2") on approximately July 10, 2011, as set forth in paragraph 26 of the Complaint.  However, ARUSTAMYAN Denies that Loan-2 was a sham as alleged in paragraph 26 of the Complaint.  ARUSTAMYAN further Denies that he did not obtain a security interest in the Veto Estate, as alleged in paragraph 26 of the Complaint.

27.  ARUSTAMYAN Admits in part and Denies in part the allegations in paragraph 27 of the Complaint.  ARUSTAMYAN Admits that he entered into an agreement to extend the repayment date for Loan-2 as alleged in paragraph 27 of the Complaint. However, ARUSTAMYAN denies that he did not receive consideration for the extension of Loan-2, as alleged in paragraph 27 of the Complaint.

28.  ARUSTAMYAN Admits the allegations in paragraph 28 of the Complaint.  ARUSTAMYAN further alleges that he has filed a civil action

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

in Armenia to enforce his rights to collect on the principal and interest due and owing to him.

29. ARUSTAMYAN Denies the allegations in paragraph 29 of the Complaint.

30. ARUSTAMYAN Admits the allegations in paragraph 30 of the Complaint, based upon information and belief.

31. ARUSTAMYAN Denies the allegations in paragraph 31 of the Complaint.

32. ARUSTAMYAN Denies the allegations in paragraph 32 of the Complaint and further provides that on or about January 9, 2019, Araratcement PB filed a dispute with the Administrative Court of the Republic of Armenia against the State Revenue Committee of the Republic of Armenia, requesting to void State Revenue Committee's Tax Penalty No. 10 and No. 11 dated December 19, 2018, with a Tax Penalty No. 3001364, which covers the period as alleged in Plaintiff's Complaint, for a complete lack of legal ground. Consequently, on or about September 25, 2020, the Administrative Court of the Republic of Armenia granted Araratcement PB's demand to void State Revenue Committee's Tax Penalty No. 3001364 due to lack of legal ground. The State Revenue Committee of the Republic of Armenia appealed the decision on but no avail since the Appellate Administrative Court of the Republic of Armenia affirmed the Administrative Court's decision on November 4, 2021.

33. ARUSTAMYAN Denies the allegations in paragraph 33 of the Complaint and further provides that on or about January 9, 2019, Multi Gaz filed a dispute with the Administrative Court of the Republic of Armenia against the State Revenue Committee of the Republic of Armenia, requesting to void State Revenue Committee's Decisions No. 37-1 and No. 38-1, dated December 14, 2018, with a Tax Penalty No. 30013187, which covers the

6

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

period as alleged in Plaintiff's Complaint, for a complete lack of legal ground. Consequently, on or about June 12, 2020, the Administrative Court of the Republic of Armenia granted Multi Gaz' demand to void State Revenue Committee's Tax Penalty No. 30013187 due to lack of legal ground. The State Revenue Committee of the Republic of Armenia appealed the decision on but no avail since the Appellate Administrative Court of the Republic of Armenia affirmed the Administrative Court's decision on September 15, 2021. Similarly, On or about January 8, 2019, Multi Leon filed a dispute with the Administrative Court of the Republic of Armenia against the State Revenue Committee of the Republic of Armenia, requesting to void State Revenue Committee's Decisions No. 6 and No. 7, dated December 17, 2018, with a Tax Penalty No. 3000858, dated January 17, 2019, which covers the period as alleged in Plaintiff's Complaint, for a complete lack of legal ground. Consequently, on or about July 23, 2020, the Administrative Court of the Republic of Armenia granted Multi Leon's demand to void State Revenue Committee's Tax Penalty No. 3000858, dated January 17, 2019, due to lack of legal ground. The State Revenue Committee of the Republic of Armenia appealed the decision on but no avail since the Appellate Administrative Court of the Republic of Armenia rejected State Revenue Committee's appeal to reconsider the Administrative Court's decision on February 2, 2022.

34. ARUSTAMYAN Admits in part based upon information and belief and Denies in part the allegations in paragraph 34 of the Complaint. ARUSTAMYAN Admits based upon information and belief that KHACHATRYAN is facing charges as described in paragraph 34 of the

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

Complaint.   ARUSTAMYAN Denies, that Loan-1 and Loan-2 are sham transactions as alleged in paragraph 34 of the Complaint.

35.  ARUSTAMNYAN Admits in part on information and belief and Denies in part the allegations in Paragraph 35 of the Complaint.   ARUSTAMYAN Admits based upon information and belief that GURGEN and ARTYOM are facing charges as alleged in paragraph 35, of the Complaint. ARUSTAMYAN lacks sufficient knowledge or information to either admit or deny the balance of the allegations in paragraph 35 of the Complaint and based thereon, Denies said allegations.

36. ARUSTAMYAN Admits the allegations in paragraph 36 of the Complaint, however, ARUSTAMYAN Denies any wrongdoing and Denies having paid bribes to KHACHATRYAN, GURGEN and ARTYOM as alleged in paragraph 36 of the Complaint.

37. ARUSTAMYAN Denies the allegations in paragraph 37 of the Complaint.

38.  ARUSTAMYAN Admits in part and Denies in part the allegations in paragraph 38 of the Complaint.   ARUSTAMYAN admits based upon information and belief that the Veto Trust entered into a Residential Purchase Agreement for the Veto Estate, as alleged in paragraph 38 of the Complaint.  However, ARUSTAMYAN Denies that the Veto Estate was to become a residence for the Khachatryan family, as alleged in paragraph 38 of the Complaint.

39.  ARUSTAMYAN lacks sufficient knowledge or information to either admit or deny the allegations in paragraph 39 of the Complaint and based thereon, Denies said allegations.

40. ARUSTAMYAN Denies the allegations in paragraph 40 of the Complaint and Denies having made any bribe payments.

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

41. ARUSTAMYAN Admits the allegations in paragraph 41 of the Complaint.

42. ARUSTAMYAN Admits the allegations in paragraph 42 of the Complaint, based upon information and belief.

43. ARUSTAMYAN Admits the allegations in paragraph 43 of the Complaint.

44. ARUSTAMYAN Admits in part and Denies in part the allegations in paragraph 44 of the Complaint. ARUSTAMYAN Admits that wires 2 to 6 corresponds very nearly with the amount of Loan-2, as alleged in paragraph 44 of the Complaint. ARUSTAMYAN Denies that Loan-2 was a sham and further Denies that Wires 1 through 6 was an illegal bribe payment, as alleged in paragraph 44 of the Complaint.

45. ARUSTAMYAN lacks sufficient knowledge and information to either Admit or Deny the allegations in paragraph 45 of the Complaint and based thereon Denies said allegations.

46. ARUSTAMYAN Admits the allegations in paragraph 46 of the Complaint, based upon information and belief.

47. ARUSTAMYAN lacks sufficient knowledge or information to either Admit or Deny the allegations in paragraph 47 of the Complaint and based thereon, Denies said allegations.

48. ARUSTAMYAN lacks sufficient knowledge or information to either Admit or Deny the allegations in paragraph 48 of the Complaint and based thereon, Denies said allegations.

49. ARUSTAMYAN lacks sufficient knowledge or information to either Admit or Deny the allegations in paragraph 49 of the Complaint and based thereon, Denies said allegations.

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

50. ARUSTAMYAN lacks sufficient knowledge or information to either Admit or Deny the allegations in paragraph 50 of the Complaint and based thereon, Denies said allegations.

51. ARUSTAMYAN lacks sufficient knowledge or information to either Admit or Deny the allegations in paragraph 51 of the Complaint and based thereon, Denies said allegations.

52. ARUSTAMYAN lacks sufficient knowledge or information to either Admit or Deny the allegations in paragraph 52 of the Complaint and based thereon, Denies said allegations.

53. ARUSTAMYAN Admits the allegations in paragraph 53 of the Complaint, based upon information and belief.

54. ARUSTAMYAN Admits the allegations in paragraph 54 of the Complaint, based upon information and belief.

55. ARUSTAMYAN Admits the allegations in paragraph 55 of the Complaint, based upon information and belief.

56. ARUSTAMYAN Admits the allegations in paragraph 56 of the Complaint, based upon information and belief.

57. ARUSTAMYAN Admits the allegations in paragraph 57 of the Complaint, based upon information and belief.

58. ARUSTAMYAN Admits the allegations in paragraph 58 of the Complaint, based upon information and belief.

59. ARUSTAMYAN Admits the allegations in paragraph 59 of the Complaint, based upon information and belief.

60. ARUSTAMYAN incorporates by reference his response to the preceding paragraphs as though fully set forth herein

61. ARUSTAMYAN Denies the allegations in paragraph 61 of the Complaint.

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

62. ARUSTAMYAN lacks sufficient knowledge or information to either Admit or Deny the allegations in paragraph 62 of the Complaint and based thereon Denies said allegations.

63. ARUSTAMYAN Denies the allegations in paragraph 62 (a) through 62 (f) of the Complaint.

64. ARUSTAMYAN Denies the allegations in paragraph 64 of the Complaint.

65. ARUSTAMYAN incorporates by reference his response to the preceding paragraphs as though fully set forth herein.

66. ARUSTAMYAN Denies the allegations in paragraph 66 of the Complaint.

67. ARUSTAMYAN Denies the allegations in paragraph 67 of the Complaint.

68. ARUSTAMYAN incorporates by reference his response to the preceding paragraphs as though fully set forth herein.

69. ARUSTAMYAN Denies the allegations in paragraph 69 of the Complaint.

70. ARUSTAMYAN Denies the allegations in paragraph 70 of the Complaint.

## AFFIRMATIVE DEFENSES
## GENERAL BACKGROUND

1. ARUSTAMYAN claims equitable and lienholder interest in the Property pursuant to the three joint business venture agreements for profit between ARUSTAMIAN and Claimants ARTYOM KHACHATRYAN and GURGEN KHACHATRYAN (hereinafter "Claimants") as discussed below.

2. As consideration and inducement for LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3 as discussed below, Borrowers, Artyom Khachatryan and Gurgen Khachatryan guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3, including

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

but not limited to the Veto Estate. Said consent by the Borrowers is unconditional and extends to whatever properties, assets and belongings may be available from which ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3.

3. In his witness statement to the Department of Economic Security and Countering Corruption of National Security Service of the Republic of Armenia on January 29, 2019, Claimant GURGEN KHACHATRYAN stated that ARUSTAMIAN and CLAIMANTS entered into a joint venture agreement for profit on or about 2009 to invest in real properties. Claimant GURGEN KHACHATRYAN further stated that they entered into a LOAN No. 1 as stated below to buy a real estate property located at 424 Robert Lane, Los Angeles, CA. Per the joint venture agreement, ARUSTAMIAN and CLAIMANTS were to renovate said property and re-sell for a higher price, and thereafter, equally share the net proceeds from the sale of said property.

4. Claimant GURGEN KHACHATRYAN further states in his witness statement January 29, 2019, that ARUSTAMIAN and CLAIMANTS entered into another joint venture agreement which formed the basis for LOAN 3 as discussed below. On or about 2011, after successfully accomplishing the first real property investment and sale in 2009, ARUSTAMIAN and CLAIMANTS entered into another joint venture agreement, which formed the basis for LOAN 3, to invest in real property located at 530 South Mapleton Drive, Los Angeles, CA to renovate, resale, and share the net proceeds from the sale of the property. Claimant GURGEN KHACHATRYAN further added in his statement

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

on January 29, 2019, that he seeks to sell the property located at 530 South Mapleton Drive, Los Angeles, CA to payout ARUSTAMYAN'S debts from the proceeds of the sell.

5. Similarly, in his statement to the Department of Economic Security and Countering Corruption of National Security Service of the Republic of Armenia in August of 2019, and in his supplemental statements on April 24, 2020, on June 9, 2020, and on October 9, 2020, ARUSTAMIAN confirmed that CLAIMANTS and he entered into joint venture agreement(s) for profit since 2009 to invest in real properties, buy buying real estate, renovating, and selling them, which formed the basis of three loan agreements as discussed below. In exchange for consideration in all three loans, CLAIMANTS were to pay ARUSTAMYAN 4 (four) percent annual interest on each of three loans as discussed below.

6. On or about July 9, 2009, ARUSTAMYAN entered into a $7,000,000 Loan Agreement with CLAIMANTS, (hereinafter "**LOAN NO. 1**"). According to the written terms of LOAN NO. 1, the loan was due to be paid in full plus 4 (four) percent annual interest on July 30, 2010, to be paid by the due date on July 20, 2010. If the loan was not repaid within the specified time, a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 1 is paid in full.

7. As consideration and inducement for LOAN NO. 1; Borrowers, Artyom Khachatryan and Gurgen Khachatryan guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 1 including but not limited to the Veto Estate. Said consent by the Borrowers is unconditional and

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

extends to whatever properties, assets and belongings may be available from which ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 1.

8. On or about July 29, 2010, ARUSTAMYAN and CLAIMANTS entered into an amended agreement to extend LOAN NO. 1's repayment date to July 30, 2015 (hereinafter "Amendment 1 for LOAN No. 1"). All other provisions on LOAN NO. 1 remained the same and in effect as to Amendment 1 for LOAN No. 1, including 4 (four) percent annual interest and a penalty of 0.01 percent was to be assessed per day, if LOAN No. 1 was not repaid in full within the specified time.

9. On or about July 28, 2015, ARUSTAMYAN and CLAIMANTS entered into another amended agreement to extend LOAN NO. 1's repayment date to July 30, 2010 (hereinafter "Amendment 2 for LOAN No. 1"). All other provisions on LOAN NO. 1 remained the same and in effect as to Amendment 1 for LOAN No. 1, including 4 (four) percent annual interest and a penalty of 0.01 percent was to be assessed per day, if LOAN No. 1 was not repaid in full within the specified time. A true and correct copy of English translation of LOAN NO. 1 and Amendment 1 for LOAN NO. 1, and Amendment 2 for LOAN NO. 1 are attached hereto as **Exhibit "A."**

10. On or ABOUT April 30, 2011, ARUSTAMYAN entered into a $10,000,000 Loan Agreement with CLAIMANTS, (hereinafter "**LOAN NO. 2**"). According to the written terms of LOAN NO. 2, the loan was due to be paid in full plus 4 (four)percent annual interest on April 30, 2016, to be paid by the due date on April 30, 2016. If the loan was not

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

repaid within the specified time, a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 2 is paid in full.

11. As consideration and inducement for LOAN NO. 2; Borrowers, Artyom Khachatryan and Gurgen Khachatryan guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 2, including but not limited to the Veto Estate. Said consent by the Borrowers is unconditional and extends to whatever properties, assets and belongings may be available from which ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 2.

12. On or about April 20, 2016, ARUSTAMYAN and CLAIMANTS entered into an amended agreement to extend LOAN NO. 2's repayment date to April 30, 2019 (hereinafter "Amendment 1 for LOAN No. 2"). All other provisions on LOAN NO. 2 remained the same and in effect as to  Amendment 1 for LOAN No. 1, including 4 (four)percent annual interest and a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 2 is paid in full, if the LOAN NO. 2 was not repaid within the specified time. A true and correct copy of English translation of LOAN NO. 2 and Amendment 1 for LOAN NO. 2 are attached hereto as **Exhibit "B."**

13. On or ABOUT July 10, 2011, ARUSTAMYAN entered into a $13,400,000 Loan Agreement with CLAIMANTS, (hereinafter "**LOAN NO. 3**"). According to the written terms of LOAN NO. 3, the loan was due to be paid in full plus 4 (four)percent annual interest on July 10, 2016, to be paid by the due date on July 10, 2016. If the loan was not

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

repaid within the specified time, a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 3 is paid in full.

14. As consideration and inducement for LOAN NO. 3; Borrowers, Artyom Khachatryan and Gurgen Khachatryan guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 3, including but not limited to the Veto Estate. Said consent by the Borrowers is unconditional and extends to whatever properties, assets and belongings may be available from which ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 3.

15. On or about July 7, 2016, ARUSTAMYAN and CLAIMANTS entered into an amended agreement to extend LOAN NO. 3's repayment date to July 10, 2019 (hereinafter "Amendment 1 for LOAN No. 3"). All other provisions on LOAN NO. 3 remained the same and in effect as to Amendment 1 for LOAN No. 1, including 4 (four)percent annual interest and a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 3 is paid in full, if the LOAN NO. 3 was not repaid within the specified time. A true and correct copy of English translation of LOAN NO. 3 and Amendment 1 for LOAN NO. 3 are attached hereto as **Exhibit "C."**

16. Pursuant to a the ARUSTAMYAN and CLAIMANTS joint venture agreement, funds from ARUSTAMYAN corresponding to this LOAN NO. 3 amount were used to purchase the Veto Estate. As acknowledged in the Complaint, on July 8, 2011, ARUSTAMYAN caused approximately $999,500 to be wired from an HSBC account in Armenia in his name to the Veto Trust's Bank of America account ending in

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

'7103 in the United States. Four days later, on July 12, 2011, the Veto Trust used check No. 102 in the amount of $1,000,000 drawn on the same Bank of America Account to open escrow with West Coast Escrow at Comerica Bank for purchase of the Veto Estate. Four days later, on July 12, 2011, the Veto Trust used check No. 102 in the amount of $1,000,000 drawn on the same Bank of America Account to open escrow with West Coast Escrow at Comerica Bank for purchase of the Veto Estate. After the Veto Trust's initial $1 million payment, ARUSTAMYAN paid the substantial remainder of the purchase price directly to West Coast Escrow at its account at Comerica Bank. From July 27, 2011 to August 3, 2011, ARUSTAMYAN caused the following wire transfers to be made from HSBC Bank accounts in Armenia in his name to the West Coast Escrow account at Comerica Bank in a total of total $13,401,199.40. Compl. ¶ 41, 42, 43.

17. This sum corresponds to the amount of LOAN NO. 3 for $13,400,000 ARUSTAMYAN entered with CLAIMANTS on July, 10, 2011. Pursuant to their joint venture agreement between ARUSTAMYAN and CLAIMANTS, CLAIMANTS purchased 530 South Mapleton Drive, Los Angeles, CA to renovate and then to re-sell, and share the net profits from the sale of the property, after reimbursement of costs to CLAIMANTS and repaying the principal to ARUSTAMYAN.

18. As of April 2, 2021, CLAIMAINTS failed to perform under the LOAN NO. 1; LOAN NO. 2, and LOAN NO. 3.

19. As such, on or about April 2, 2021, ARUSTAMYAN filed two separates Demands for Involuntary Bankruptcy (hereinafter "Demand") in the Republic of Armenia Bankruptcy Court to declare CLAIMANTS

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

bankrupt pursuant to Republic of Armenia *Bankruptcy Code* Article 3 (1), which states in pertinent parts "The debtor can be declared bankrupt the judgment - on own initiative (the statement for voluntary bankruptcy) or upon the demand of the creditor (the statement for involuntary insolvency) if the debtor is insolvent." Article 3 (2) further states in pertinent parts that "The judgment debtor can be declared bankrupt: 1) based on the statement for involuntary insolvency if it allowed delay of the indisputable payment obligations exceeding the two-thousand fold size of the minimum wage established by the law for the term of 90 days and more, and the specified delay continues at the time of decision (the actual insolvency). The payment obligation is indisputable if the debtor does not object to it or if he objects to the mentioned obligation."

20. ARUSTAMYAN further claimed in each Demand a total of $21,122,000 against each CLAIMANT. This amount was calculated by adding $15,200,000 for each CLAIMANT (50% of the total amount due by both CLAIMANTS for an amount of $30,400,000 pursuant to LOAN NO. 1 for $7,000,000; LOAN NO. 2 for $10,000,000; and LOAN NO. 3 for $13,400,000) to the 50% a cumulated interest of $5,922,000, from a total cumulated interest of $11,844,000.

21. As such, ARUSTAMYAN demanded a recovery total of $21,122,000 against CLAIMANT ARTYOM KHACHATRYAN and $21,122,000 against CLAIMANT GURGEN KHACHATRYAN.

22. On or about March 24, 2022, Republic of Armenia Bankruptcy Court granted ARUSTAMYAN'S Demand and declared CLAIMANT GURGEN KHACHATRYAN bankrupt. Republic of Armenia

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

Bankruptcy Court further ordered to put a lien on all property belonging to CLAIMANT GURGEN KHACHATRYAN, excluding all properties that are exempt from a lien.

23. On or about January 27, 2022, ARUSTAMYAN filed a Demand for Forfeiture Money in a total amount of 19,429,436,000 in Armenian Dram pursuant to LOAN NO.1; LOAN NO.2; and LOAN NO.3 with the Kotayq District Court of First Instance. This action is still pending with the Court.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff is estopped from pursuing this civil forfeiture action because it has failed to conduct an adequate investigation and filed its Complaint without sufficient prior analysis of the facts or understanding of LOAN NO.1; LOAN NO. 2; and LOAN NO. 3.

## SECOND AFFIRMATIVE DEFENSE

The allegations contained in Plaintiff's Complaint are compound, vague and ambiguous.

## THIRD AFFIRMATIVE DEFENSE

The government cannot obtain a forfeiture judgment pursuant to the unclean hands doctrine.

## FOURTH AFFIRMATIVE DEFENSE

The government cannot obtain the forfeiture it seeks because that result would be constitutionally disproportionate, pursuant to the Eighth Amendment to the United States Constitution.

## FIFTH AFFIRMATIVE DEFENSE

The government cannot obtain a forfeiture judgment because it has not acted in good faith.

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

## SIXTH AFFIRMATIVE DEFENSE

No substantial connection between the Property and the alleged illegal conduct. Plaintiff's claims fail, in whole or in part, because the Property does not have a "substantial connection" to alleged conduct giving rise to forfeiture under 18 U.S.C. § 983(c).

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail, in whole or in part, because the proposed forfeiture is grossly disproportionate to the alleged underlying conduct giving rise to the forfeiture pursuant to 18 U.S.C. § 983(g).

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claim that Claimant violated 18 U.S.C. Sections 1956 and 1957, which subjected the defendant property to civil forfeiture pursuant to 18 U.S.C. Section 981(a)(1)(A), and Section 981(a)(1)(C) is a claim upon which relief cannot be granted because the Claimants were engaged in a legal business enterprise that did not involve bribery or other illegal activities.

## RESERVATION OF RIGHTS

ARUSTAMYAN reserves the right to assert additional affirmative defenses or amend these affirmative defenses as discovery warrants and to the extent that facts discovered in the course of this litigation support such an affirmative defense.

## ARUSTAMYAN'S DEMAND FOR JURY TRIAL

ARUSTAMYAN hereby demands a trial by jury of all issues so triable.

## ARUSTAMYAN'S COUNTERCLAIM

Here comes the Counter Claimant/Cross-Claimant SEDRAK ARUSTAMYAN (hereinafter "ARUSTAMYAN") and hereby files this Counterclaim against the United States of America as follows:

///

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

## JURISDICTION AND VENUE

1. This is an action for declaratory and injunctive relief regarding questions for federal law, and this court therefore has jurisdiction.

2. Venue is proper in this district, as the defendant property is located in this district and Plaintiff filed its Verified Complaint for Forfeiture in this district.

## THE PARTIES

3. ARUSTAMYAN resides in Yerevan, Republic of Armenia, and claims an equitable interest in the real property located at 530 South Mapleton Drive, Los Angeles, CA (hereinafter "Veto Estate") that is the subject of the Verified Complaint for Forfeiture filed by Plaintiff the United States of America in this case.

4. Plaintiff/Counter-Defendant the United States of America is already within the jurisdiction of this Court and is the Plaintiff in the Verified Complaint for Forfeiture.

## GENERAL ALLEGATIONS

5. ARUSTAMYAN claims equitable and lienholder interests in the Property pursuant to the three joint business venture agreements for profit, between ARUSTAMYAN and Claimants ARTYOM KHACHATRYAN ("ARTYOM") and GURGEN KHACHATRYAN ("GURGEN") referred to collectively as "BORROWERS" as discussed below.

6. As consideration and inducement for LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3 as discussed below, BORROWERS guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 1; LOAN NO.

21

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

2; and LOAN NO. 3, including but not limited to the Veto Estate. Said consent by the BORROWERS is unconditional and extends to whatever properties, assets and belongings may be available from which ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3.

7. In his witness statement to the Department of Economic Security and Countering Corruption of National Security Service of the Republic of Armenia on January 29, 2019, Claimant GURGEN stated that ARUSTAMYAN and BORROWERS entered into a joint venture agreement for profit on or about 2009 to invest in real properties. Claimant GURGEN further stated that they entered into a LOAN No. 1 as stated below to buy a real property located at 424 Robert Lane, Los Angeles, CA. Per the joint venture agreement, ARUSTAMYAN and BORROWERS were to renovate said property and re-sell at a higher price, and thereafter, equally share the net proceeds from the sale of said property.

8. Claimant GURGEN further states in his witness statement January 29, 2019, that ARUSTAMYAN and BORROWERS entered into another joint venture agreement which formed the basis for LOAN 3 as discussed below. On or about 2011, after successfully accomplishing the first real property investment and sale in 2009, ARUSTAMYAN and BORROWERS entered into another joint venture agreement, which formed the basis for LOAN 3, to invest in real property located at 530 South Mapleton Drive, Los Angeles, CA, the Veto Estate, to renovate, resale, and share the net proceeds from the sale of the property. GURGEN further added in his statement on January 29, 2019, that he

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

seeks to sell the Veto Estate to repay the debts owed to ARUSTAMYAN's from the proceeds of the sell.

9. Similarly, in his statement to the Department of Economic Security and Countering Corruption of National Security Service of the Republic of Armenia in August of 2019, and in his supplemental statements on April 24, 2020, on June 9, 2020, and on October 9, 2020, ARUSTAMYAN confirmed that BORROWERS and he entered into joint venture agreement(s) for profit since 2009 to invest in real properties, buy buying real estate, renovating, and selling them, which formed the basis of three loan agreements as discussed below. In exchange for consideration in all three loans, BORROWERS were to pay ARUSTAMYAN 4 (four) percent annual interest on each of three loans as discussed below.

10. On or about July 9, 2009, ARUSTAMYAN entered into a $7,000,000 Loan Agreement with BORROWERS, (hereinafter "**LOAN NO. 1**"). According to the written terms of LOAN NO. 1, the loan was due to be paid in full plus 4 (four) percent annual interest on July 30, 2010, to be paid by the due date on July 20, 2010. If the loan was not repaid within the specified time, a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 1 is paid in full. A true and correct copy of English translation of LOAN NO. 1 is attached hereto as **Exhibit "A."**

11. On or about July 29, 2010, ARUSTAMYAN and BORROWERS entered into an amended agreement to extend LOAN NO. 1's repayment date to July 30, 2015 (hereinafter "Amendment 1 for LOAN No. 1"). All other provisions on LOAN NO. 1 remained the same and in effect as to Amendment 1 for LOAN No. 1, including 4 (four) percent annual

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

interest and a penalty of 0.01 percent was to be assessed per day, if LOAN No. 1 was not repaid in full within the specified time.

12. On or about July 28, 2015, ARUSTAMYAN and BORROWERS entered into another amended agreement to extend LOAN NO. 1's repayment date to July 30, 2010 (hereinafter "Amendment 2 for LOAN No. 1"). All other provisions on LOAN NO. 1 remained the same and in effect as to Amendment 1 for LOAN No. 1, including 4 (four)percent annual interest and a penalty of 0.01 percent was to be assessed per day, if LOAN No. 1 was not repaid in full within the specified time.

13. As consideration and inducement for LOAN NO. 1; BORROWERS guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 1 including but not limited to the Veto Estate. Said consent by the BORROWERS is unconditional and extends to whatever properties, assets and belongings may be available from which ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 1. A true and correct copy of English translation of LOAN NO. 1 and Amendment 1 for LOAN NO. 1, and Amendment 2 for LOAN NO. 1 are attached hereto as **Exhibit "A."**

14. On or ABOUT April 30, 2011, ARUSTAMYAN entered into a $10,000,000 Loan Agreement with BORROWERS, (hereinafter "**LOAN NO. 2**"). According to the written terms of LOAN NO. 2, the loan was due to be paid in full plus 4 (four) percent annual interest on April 30, 2016, to be paid by the due date on April 30, 2016. If the loan was not repaid within the specified time, a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 2 is paid in full.

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

15. As consideration and inducement for LOAN NO. 2; BORROWERS guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 2 including but not limited to the Veto Estate. Said consent by the BORROWERS is unconditional and extends to whatever properties, assets and belongings may be available from which ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 2.

16. On or about April 20, 2016, ARUSTAMYAN and BORROWERS entered into an amended agreement to extend LOAN NO. 2's repayment date to April 30, 2019 (hereinafter "Amendment 1 for LOAN No. 2"). All other provisions on LOAN NO. 2 remained the same and in effect as to Amendment 1 for LOAN No. 1, including 4 (four) percent annual interest and a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 2 is paid in full, if the LOAN NO. 2 was not repaid within the specified time. A true and correct copy of English translation of LOAN NO. 2 and Amendment 1 for LOAN NO. 2 are attached hereto as **Exhibit "B."**

17. On or ABOUT July 10, 2011, ARUSTAMYAN entered into a $13,400,000 Loan Agreement with BORROWERS, (hereinafter "**LOAN NO. 3**"). According to the written terms of LOAN NO. 3, the loan was due to be paid in full plus 4 (four) percent annual interest on July 10, 2016, to be paid by the due date on July 10, 2016. If the loan was not repaid within the specified time, a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 3 is paid in full.

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

18. As consideration and inducement for LOAN NO. 3; BORROWERS, guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 3 including but not limited to the Veto Estate. Said consent by the BORROWERS is unconditional and extends to whatever properties, assets and belongings may be available from which ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 3.

19. On or about July 7, 2016, ARUSTAMYAN and BORROWERS entered into an amended agreement to extend LOAN NO. 3's repayment date to July 10, 2019 (hereinafter "Amendment 1 for LOAN No. 3"). All other provisions on LOAN NO. 3 remained the same and in effect as to Amendment 1 for LOAN No. 1, including 4 (four) percent annual interest and a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 3 is paid in full, if the LOAN NO. 3 was not repaid within the specified time. A true and correct copy of English translation of LOAN NO. 3 and Amendment 1 for LOAN NO. 3 are attached hereto as **Exhibit "C."**

20. Pursuant to a the ARUSTAMYAN and BORROWERS' joint venture agreement, funds from ARUSTAMYAN corresponding to this LOAN NO. 3 amount were used to purchase the Veto Estate. As acknowledged in the Complaint, on July 8, 2011, ARUSTAMYAN caused approximately $999,500 to be wired from an HSBC account in Armenia in his name to the Veto Trust's Bank of America account ending in '7103 in the United States. Four days later, on July 12, 2011, the Veto Trust used check No. 102 in the amount of $1,000,000 drawn on the

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

same Bank of America Account to open escrow with West Coast Escrow at Comerica Bank for purchase of the Veto Estate. Four days later, on July 12, 2011, the Veto Trust used check No. 102 in the amount of $1,000,000 drawn on the same Bank of America Account to open escrow with West Coast Escrow at Comerica Bank for purchase of the Veto Estate. After the Veto Trust's initial $1 million payment, ARUSTAMYAN paid the substantial remainder of the purchase price directly to West Coast Escrow at its account at Comerica Bank. From July 27, 2011 to August 3, 2011, ARUSTAMYAN caused the following wire transfers to be made from HSBC Bank accounts in Armenia in his name to the West Coast Escrow account at Comerica Bank in a total of total $13,401,199.40. Compl. ¶ 41, 42, 43.

21. This sum corresponds to the amount of LOAN NO. 3 for $13,400,000 ARUSTAMYAN entered with CLAIMANTS on July, 10, 2011. Pursuant to their joint venture agreement between ARUSTAMYAN and BORROWERS, the BORROWERS purchased 530 South Mapleton Drive, Los Angeles, CA, the Veto Estate, to renovate and to re-sell at a higher rate and to share the net profits from the sale of the property, after reimbursement of costs to BORROWERS and repaying the principal to ARUSTAMYAN.

22. As of April 2, 2021, BORROWERS failed to perform under the terms of LOAN NO. 1; LOAN NO. 2, and LOAN NO. 3.

23. As such, on or about April 2, 2021, ARUSTAMYAN filed two separates Demands for Involuntary Bankruptcy (hereinafter "Demand") in the Republic of Armenia Bankruptcy Court to declare BORROWERS bankrupt pursuant to Republic of Armenia *Bankruptcy Code* Article 3

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

(1), which states in pertinent parts "The debtor can be declared bankrupt the judgment - on own initiative (the statement for voluntary bankruptcy) or upon the demand of the creditor (the statement for involuntary insolvency) if the debtor is insolvent." Article 3 (2) further states in pertinent parts that "The judgment debtor can be declared bankrupt: 1) based on the statement for involuntary insolvency if it allowed delay of the indisputable payment obligations exceeding the two-thousand fold size of the minimum wage established by the law for the term of 90 days and more, and the specified delay continues at the time of decision (the actual insolvency). The payment obligation is indisputable if the debtor does not object to it or if he objects to the mentioned obligation."

24. ARUSTAMYAN further claimed in each Demand a total of $21,122,000 against each BORROWER. This amount was calculated by adding $15,200,000 for each BORROWER (50% of the total amount due by both BORROWERS for an amount of $30,400,000 pursuant to LOAN NO. 1 for $7,000,000; LOAN NO. 2 for $10,000,000; and LOAN NO. 3 for $13,400,000) to the 50% a cumulated interest of $5,922,000, from a total cumulated interest of $11,844,000.

25. As such, ARUSTAMYAN demanded a recovery total of $21,122,000 against ARTYOM and $21,122,000 against GURGEN.

26. On or about March 24, 2022, Republic of Armenia Bankruptcy Court granted ARUSTAMYAN'S Demand and declared GURGEN bankrupt. Republic of Armenia Bankruptcy Court further ordered to put a lien on all property belonging to GURGEN, excluding all properties that are exempt from a lien.

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

27. On or about January 27, 2022, ARUSTAMYAN filed a Demand for Forfeiture Money in a total amount of 19,429,436,000 in Armenian Dram pursuant to LOAN NO.1; LOAN NO.2; and LOAN NO.3 with the Kotayq District Court of First Instance. This action is still pending.

28. Although ARUSTAMYAN was charged over two years ago with violation of Article 312 of the Criminal Code of the Republic of Armenia, he has yet to be convicted and the charges have yet to even proceed to court.

29. The criminal charge against ARUSTAMYAN has been in the investigation stage *since April of 2020, and no formal criminal court proceedings have been held since then* due to prosecutor's inability to collect/present sufficient evidence that the crime in question has occurred.

30. Consequently, PLAINTIFF'S claims fail, in whole or in part, because the Property does not have a "substantial connection" to any alleged felony conduct giving rise to forfeiture under 18 U.S.C. § 983(c).

31. ARUSTAMYAN and BORROWERS were engaged in lawful business activities, the three joint venture agreements for profit (LOAN NO.1; LOAN NO. 2; and LOAN NO. 3).

32. ARUSTAMYAN did not bribe KHACHATRYAN while KHACHATRYAN was serving the first as the chairman of the State Revenue Committee and later as the minister of finance of the Republic of Armenia as alleged in Plaintiff's Complaint.

33. ARUSTAMYAN did not make the payments to BORROWERS in order to secure favorable tax treatment for his business entities, as alleged in Plaintiff's Complaint.

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

34. In fact, ARUSTAMYAN actively exercised his rights and sought court intervention in the civil and bankruptcy courts of the Republic of Armenia to recover monies owed to him by BORROWERS pursuant to three joint business venture agreements for profit (LOAN NO.1; LOAN NO. 2; and LOAN NO. 3).

35. As such, ARUSTAMYAN filed two separates Demands for Involuntary Bankruptcy (hereinafter "Demand") in the Republic of Armenia Bankruptcy Court to declare BORROWERS bankrupt pursuant to Republic of Armenia *Bankruptcy Code* Article 3 (1).

36. ARUSTAMYAN demanded a recovery total of $21,122,000 against ARTYOM and $21,122,000 against GURGEN.

37. On or about March 24, 2022, Republic of Armenia Bankruptcy Court granted ARUSTAMYAN'S Demand and declared GURGEN bankrupt. Republic of Armenia Bankruptcy Court further ordered to put a lien on all property belonging to GURGEN, excluding all properties that are exempt from a lien.

38. Similarly, on or about January 27, 2022, ARUSTAMYAN filed a Demand for Forfeiture Money in a total amount of 19,429,436,000 in Armenian Dram pursuant to LOAN NO.1; LOAN NO.2; and LOAN NO.3 with the Kotayq District Court of First Instance. This action is still pending.

39. At no time have the companies with which ARUSTAMYAN is affiliated, namely, Araratcement PB, Multi Gaz, and Multi Leon been found responsible for tax evasion as alleged in the Complaint at ¶ 29-33.

40. In fact, on or about January 9, 2019, Araratcement PB filed a dispute with the Administrative Court of the Republic of Armenia against the

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

State Revenue Committee of the Republic of Armenia, requesting to void State Revenue Committee's Tax Penalty No. 10 and No. 11 dated December 19, 2018, with a Tax Penalty No. 3001364, which covers the period as alleged in Plaintiff's Complaint, for a complete lack of legal ground. Consequently, on or about September 25, 2020, the Administrative Court of the Republic of Armenia granted Araratcement PB's demand to void State Revenue Committee's Tax Penalty No. 3001364 due to lack of legal ground. The State Revenue Committee of the Republic of Armenia appealed the decision on but no avail since the Appellate Administrative Court of the Republic of Armenia affirmed the Administrative Court's decision on November 4, 2021.

41. Similarly, or about January 9, 2019, Multi Gaz filed a dispute with the Administrative Court of the Republic of Armenia against the State Revenue Committee of the Republic of Armenia, requesting to void State Revenue Committee's Decisions No. 37-1 and No. 38-1, dated December 14, 2018, with a Tax Penalty No. 30013187, which covers the period as alleged in Plaintiff's Complaint, for a complete lack of legal ground. Consequently, on or about June 12, 2020, the Administrative Court of the Republic of Armenia granted Multi Gaz' demand to void State Revenue Committee's Tax Penalty No. 30013187 due to lack of legal ground. The State Revenue Committee of the Republic of Armenia appealed the decision on but no avail since the Appellate Administrative Court of the Republic of Armenia affirmed the Administrative Court's decision on September 15, 2021.

42. Likewise, on or about January 8, 2019, Multi Leon filed a dispute with the Administrative Court of the Republic of Armenia against the State

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

Revenue Committee of the Republic of Armenia, requesting to void State Revenue Committee's Decisions No. 6 and No. 7, dated December 17, 2018, with a Tax Penalty No. 3000858, dated January 17, 2019, which covers the period as alleged in Plaintiff's Complaint, for a complete lack of legal ground. Consequently, on or about July 23, 2020, the Administrative Court of the Republic of Armenia granted Multi Leon's demand to void State Revenue Committee's Tax Penalty No. 3000858, dated January 17, 2019, due to lack of legal ground. The State Revenue Committee of the Republic of Armenia appealed the decision on but no avail since the Appellate Administrative Court of the Republic of Armenia rejected State Revenue Committee's appeal to reconsider the Administrative Court's decision on February 2, 2022.

43. Upon information and belief, ARUSTAMYAN further alleges that PLAINTIFF'S claims fail, in whole or in part, because the proposed forfeiture is grossly disproportionate to the underlying conduct giving rise to the forfeiture pursuant to 18 U.S.C. § 983(g) for the foregoing reasons.

44. ARUSTAMYAN hereby requests that this Court to determine these questions of law and enter injunctive relief preventing the ongoing conduct by Plaintiff, by failure to provide a substantial connection between the Defendant Property and any alleged wrongful conduct by ARUSTAMYAN and ARTYOM and GURGEN.

## REQUEST FOR RELIEF

WHEREFORE, ARUSTAMYAN respectfully requests that this Court enter a final judgment in favor of his as follows:

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

a) Dismiss, without prejudice the forfeiture proceedings related to the Defendant property, 530 South Mapleton Drive, Los Angeles, CA, the Veto Estate, pending the outcome and final judgment of the court in Armenia as it relates to the alleged wrongful and/or criminal conduct alleged in the Complaint;

b) Stay the forfeiture proceedings, pending the outcome and final judgment of the court in Armenia as it relates to the alleged wrongful and/or criminal conduct alleged in the Complaint;

c) Declare that there is no substantial connection between the Property and any alleged wrongful conduct giving rise to forfeiture under 18 U.S.C. § 983(c);

d) Declare that the proposed forfeiture is grossly disproportionate to the underlying conduct giving rise to the forfeiture pursuant to 18 U.S.C. § 983(g);

e) Award ARUSTAMYAN any and all such other relief as the Court deems just and equitable, including, but not limited to, an award of attorney's fees and costs to the extent provided for by law.

## CROSS-CLAIM

Here comes the Counter Claimant/Cross-Claimant SEDRAK ARUSTAMYAN (hereinafter "ARUSTAMYAN") and hereby files this Cross-Claim against Claimants ARTYOM KHACHATRYAN ("ARTYOM") and GURGEN KHACHATRYAN ("GURGEN") (hereinafter "CLAIMANTS") pursuant to Federal *Rule of Civil Procedure* 13(g).

## JURISDICTION AND VENUE

1. This Court may exercise supplemental jurisdiction pursuant to Federal *Rule of Civil Procedure* 13(g), which states in pertinent parts: "A

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."

2. Allegations in the Cross-Complaint arise "out of a transaction or occurrence that is the subject matter of the original action," and it relates to "any property that is the subject of the original action," Federal *Rule of Civil Procedure* 13(g). The test is whether the claims are "so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit" *Pochiro v. Prudential Ins. Co. of America*, 827 F2d 1246, 1249 (9th Cir. 1987). The "logical relationship" test looks at whether the same operative facts underly both the original action and the counter-claim or cross-claim. See *Pochiro* 827 F.2d at 1250.

3. In the instant case, allegations in the Cross-Complaint arise out of the same set of operative facts, that form the bases and allegations in Plaintiff's Complaint.

4. Venue is proper in this district, as the defendant property is located in this district, CLAIMANTS filed their Verified Claim in this district, and Plaintiff filed its Verified Complaint for Forfeiture in this district.

## THE PARTIES

5. ARUSTAMYAN resides in Yerevan, Republic of Armenia, and claims an equitable interest in the real property located at 530 South Mapleton

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

Drive, Los Angeles, CA that is the subject of the Verified Complaint for Forfeiture filed by Plaintiff the United States of America in this case.

6. Upon information and belief, Claimants reside in Yerevan, Republic of Armenia and filed their Verified Claim in this district.

## GENERAL ALLEGATIONS

7. As consideration and inducement for LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3 as discussed below, Borrowers, Artyom Khachatryan and Gurgen Khachatryan guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3, including but not limited to the Veto Estate.  Said consent by the Borrowers is unconditional and extends to whatever properties, assets and belongings may be available from which ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3.

8. On or about July 9, 2009, ARUSTAMYAN entered into a $7,000,000 Loan Agreement with CLAIMANTS, (hereinafter "**LOAN NO. 1**"). According to the written terms of LOAN NO. 1, the loan was due to be paid in full plus 4 (four) percent annual interest on July 30, 2010, to be paid by the due date on July 20, 2010. If the loan was not repaid within the specified time, a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 1 is paid in full.

9. As consideration and inducement for LOAN NO. 1; GURGEN and ARTYOM guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 1 including but not limited to the Veto Estate.  Said consent

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

by the CLAIMANTS was unconditional and extends to whatever properties, assets and belongings may be available from which ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 1.

10. On or about July 29, 2010, ARUSTAMYAN and CLAIMANTS entered into an amended agreement to extend LOAN NO. 1's repayment date to July 30, 2015 (hereinafter "Amendment 1 for LOAN No. 1"). All other provisions on LOAN NO. 1 remained the same and in effect as to Amendment 1 for LOAN No. 1, including 4 (four)percent annual interest and a penalty of 0.01 percent was to be assessed per day, if LOAN No. 1 was not repaid in full within the specified time.

11. On or about July 28, 2015, ARUSTAMYAN and CLAIMANTS entered into another amended agreement to extend LOAN NO. 1's repayment date to July 30, 2010 (hereinafter "Amendment 2 for LOAN No. 1"). All other provisions on LOAN NO. 1 remained the same and in effect as to Amendment 1 for LOAN No. 1, including 4 (four)percent annual interest and a penalty of 0.01 percent was to be assessed per day, if LOAN No. 1 was not repaid in full within the specified time. A true and correct copy of English translation of LOAN NO. 1 and Amendment 1 for LOAN NO. 1, and Amendment 2 for LOAN NO. 1 are attached hereto as **Exhibit "A."**

12. On or ABOUT April 30, 2011, ARUSTAMYAN entered into a $10,000,000 Loan Agreement with CLAIMANTS, (hereinafter "**LOAN NO. 2**"). According to the written terms of LOAN NO. 2, the loan was due to be paid in full plus 4 (four)percent annual interest on April 30, 2016, to be paid by the due date on April 30, 2016. If the loan was not

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

repaid within the specified time, a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 2 is paid in full.

13. As consideration and inducement for LOAN NO. 2; ARTYOM and GURGEN guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 2 including but not limited to the Veto Estate. Said consent by ARTYOM and GURGEN is unconditional and extends to whatever properties, assets and belongings may be available from which ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 2.

14. On or about April 20, 2016, ARUSTAMYAN and CLAIMANTS entered into an amended agreement to extend LOAN NO. 2's repayment date to April 30, 2019 (hereinafter "Amendment 1 for LOAN No. 2"). All other provisions on LOAN NO. 2 remained the same and in effect as to  Amendment 1 for LOAN No. 1, including 4 (four)percent annual interest and a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 2 is paid in full, if the LOAN NO. 2 was not repaid within the specified time. A true and correct copy of English translation of LOAN NO. 2 and Amendment 1 for LOAN NO. 2 are attached hereto as **Exhibit "B."**

15. On or ABOUT July 10, 2011, ARUSTAMYAN entered into a $13,400,000 Loan Agreement with CLAIMANTS, (hereinafter "**LOAN NO. 3**"). According to the written terms of LOAN NO. 3, the loan was due to be paid in full plus 4 (four)percent annual interest on July 10, 2016, to be paid by the due date on July 10, 2016. If the loan was not

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

repaid within the specified time, a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 3 is paid in full.

16. As consideration and inducement for LOAN NO. 3; ARTYOM and GURGEN guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 3 including but not limited to the Veto Estate. Said consent by the ARTYOM and GURGEN is unconditional and extends to whatever properties, assets and belongings may be available from which ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 3.

17. On or about July 7, 2016, ARUSTAMYAN and CLAIMANTS entered into an amended agreement to extend LOAN NO. 3's repayment date to July 10, 2019 (hereinafter "Amendment 1 for LOAN No. 3"). All other provisions on LOAN NO. 3 remained the same and in effect as to Amendment 1 for LOAN No. 1, including 4 (four)percent annual interest and a penalty of 0.01 percent was to be assessed per day, until the LOAN NO. 3 is paid in full, if the LOAN NO. 3 was not repaid within the specified time. A true and correct copy of English translation of LOAN NO. 3 and Amendment 1 for LOAN NO. 3 are attached hereto as **Exhibit "C."**

18. Pursuant to the ARUSTAMYAN and CLAIMANTS joint venture agreement, funds from ARUSTAMYAN corresponding to this LOAN NO. 3 amount were used to purchase the Veto Estate. As acknowledged in the Complaint, on July 8, 2011, ARUSTAMYAN caused approximately $999,500 to be wired from an HSBC account in Armenia in his name to the Veto Trust's Bank of America account ending in

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

'7103 in the United States. Four days later, on July 12, 2011, the Veto Trust used check No. 102 in the amount of $1,000,000 drawn on the same Bank of America Account to open escrow with West Coast Escrow at Comerica Bank for purchase of the Veto Estate. Four days later, on July 12, 2011, the Veto Trust used check No. 102 in the amount of $1,000,000 drawn on the same Bank of America Account to open escrow with West Coast Escrow at Comerica Bank for purchase of the Veto Estate. After the Veto Trust's initial $1 million payment, ARUSTAMYAN paid the substantial remainder of the purchase price directly to West Coast Escrow at its account at Comerica Bank. From July 27, 2011 to August 3, 2011, ARUSTAMYAN caused the following wire transfers to be made from HSBC Bank accounts in Armenia in his name to the West Coast Escrow account at Comerica Bank in a total of total $13,401,199.40. Compl. ¶41, 42, 43.

19. This sum corresponds to the amount of LOAN NO. 3 for $13,400,000 ARUSTAMYAN entered with CLAIMANTS on July, 10, 2011. Pursuant to their joint venture agreement between ARUSTAMYAN and CLAIMANTS, CLAIMANTS purchased 530 South Mapleton Drive, Los Angeles, CA, the Veto Estate to renovate and to re-sell at a higher price and to share the net profits from the sale of the property, after reimbursement of costs to CLAIMANTS and repaying the principal to ARUSTAMYAN.

20. As of April 2, 2021, CLAIMAINTS failed to perform under the LOAN NO. 1; LOAN NO. 2, and LOAN NO. 3.

21. As such, on or about April 2, 2021, ARUSTAMYAN filed two separates  Demands for Involuntary Bankruptcy (hereinafter "Demand")

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

in the Republic of Armenia Bankruptcy Court to declare CLAIMANTS bankrupt pursuant to Republic of Armenia *Bankruptcy Code* Article 3 (1), which states in pertinent parts "The debtor can be declared bankrupt the judgment - on own initiative (the statement for voluntary bankruptcy) or upon the demand of the creditor (the statement for involuntary insolvency) if the debtor is insolvent." Article 3 (2) further states in pertinent parts that "The judgment debtor can be declared bankrupt: 1) based on the statement for involuntary insolvency if it allowed delay of the indisputable payment obligations exceeding the two-thousand fold size of the minimum wage established by the law for the term of 90 days and more, and the specified delay continues at the time of decision (the actual insolvency). The payment obligation is indisputable if the debtor does not object to it or if he objects to the mentioned obligation."

22. ARUSTAMYAN further claimed in each Demand a total of $21,122,000 against each CLAIMANT. This amount was calculated by adding $15,200,000 for each CLAIMANT (50% of the total amount due by both CLAIMANTS for an amount of $30,400,000 pursuant to LOAN NO. 1 for $7,000,000; LOAN NO. 2 for $10,000,000; and LOAN NO. 3 for $13,400,000) to the 50% a cumulated interest of $5,922,000, from a total cumulated interest of $11,844,000.

23. As such, ARUSTAMYAN demanded a recovery total of $21,122,000 against Claimant ARTYOM and $21,122,000 against Claimant GURGEN.

24. On or about March 24, 2022, Republic of Armenia Bankruptcy Court granted ARUSTAMYAN'S Demand and declared Claimant GURGEN

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

bankrupt. Republic of Armenia Bankruptcy Court further ordered that a lien be placed all property belonging to GURGEN, excluding all properties that are exempt from a lien.

25. On or about January 27, 2022, ARUSTAMYAN filed a Demand for Forfeiture Money in a total amount of 19,429,436,000 in Armenian Dram pursuant to LOAN NO.1; LOAN NO.2; and LOAN NO.3 with the Kotayq District Court of First Instance. This action is still pending.

26. In his witness statement to the Department of Economic Security and Countering Corruption of National Security Service of the Republic of Armenia on January 29, 2019, Claimant GURGEN stated that ARUSTAMYAN and CLAIMANTS entered into a joint venture agreement for profit on or about 2009 to invest in real properties. GURGEN further stated that they entered into a LOAN No. 1 as stated below to buy a real estate property located at 424 Robert Lane, Los Angeles, CA. Per the joint venture agreement, ARUSTAMYAN and CLAIMANTS were to renovate said property and to re-sell for a higher price, and thereafter, equally share the net proceeds from the sale of said property.

27. GURGEN further states in his witness statement January 29, 2019, that ARUSTAMYAN and CLAIMANTS entered into another joint venture agreement which formed the basis for LOAN 3 as discussed below. On or about 2011, after successfully accomplishing the first real property investment and sale in 2009, ARUSTAMYAN and CLAIMANTS entered into another joint venture agreement, which formed the basis for LOAN 3, to invest in real property located at 530 South Mapleton Drive, Los Angeles, CA, the Veto Estate, to renovate, re-sell, and share the net

41

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

proceeds from the sale of the property. GURGEN further added in his statement on January 29, 2019, that he seeks to sell the property located at 530 South Mapleton Drive, Los Angeles, CA, the Veto Estate to payout ARUSTAMYAN'S debts from the proceeds of the sale.

28. Similarly, in his statement to the Department of Economic Security and Countering Corruption of National Security Service of the Republic of Armenia in August of 2019, and in his supplemental statements on April 24, 2020, on June 9, 2020, and on October 9, 2020, ARUSTAMYAN confirmed that CLAIMANTS and he entered into joint venture agreement(s) for profit since 2009 to invest in real properties, buy buying real estate, renovating, and selling them, which formed the basis of three loan agreements as discussed below. In exchange for consideration in all three loans, CLAIMANTS were to pay ARUSTAMYAN 4 (four) percent annual interest on each of three loans as discussed below.

## COUNT ONE
## (CONSTRUCTIVE TRUST)

29. ARUSTAMYAN re-alleges and incorporates by reference all the allegations of this Cross-Claim with the same force and effect as it fully restated herein.

30. ARUSTAMYAN claims an equitable interest in the Defendant property, the Veto Estate, pursuant to the three joint business venture agreements for profit between ARUSTAMYAN and CLAIMANTS.

31. In addition, the court in Armenia has granted ARUSTAMYAN's request to declare GURGEN bankrupt and has granted ARUSTAMYAN the

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

right to place a lien on all assets, exclusive of those that are not subject to a lien, from which ARUSTAMYAN's debt may be satisfied.

32. As consideration and inducement for LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3 as discussed below, ARTYOM and GURGEN guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3, including but not limited to the Veto Estate. Said consent by the GURGEN and ARTYOM is unconditional and extends to whatever properties, assets and belongings may be available from which ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3.

33. A Fiduciary relationship existed between ARUSTAMYAN and CLAIMANTS, as members of a joint venture.

34. CLAIMANTS made an express promise to ARUSTAMYAN inducing ARUSTAMYAN to enter into joint venture agreements (LOAN NO. 1; LOAN NO. 2; and LOAN O. 3) and invest in real properties, including in the Property that is the subject of the Complaint.

35. ARUSTAMYAN relied on CLAIMANTS' promise and loaned monies to CLAIMANTS pursuant to LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3.

36. CLAIMANTS were unjustly enriched by monies paid by ARUSTAMYAN and received by CLAIMANTS.

37. A constructive trust is an equitable remedial device by which a Court adjudges specific restitution of a received benefit. Constructive trusts may be imposed when a party has acquired legal title to property or money under such circumstances that he or she may not in good

43

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

conscience retain the beneficial interest in the property, and in such a situation, equity converts the legal titleholder into a trustee holding the title for the benefit of those entitled to the ownership thereof.

38. Here, ARUSTAMYAN seeks equitable redress for CLAIMANTS' conduct in taking money from ARUSTAMYAN in exchange for promises that the funds would be used in furtherance of the joint venture agreement by and between the parties, in purchasing, renovating and re-selling, for profit various parcels of real property, including but not limited to the Veto Estate, the Defendant in this action.

39. A Constructive Trust should be imposed for the purpose of preventing unjust enrichment by the CLAIMANTS for retaining the funds extended to them by ARUSTAMYAN and the real property purchases using the same, including but not limited to the Veto Estate.

40. A Constructive Trust should be imposed to prevent unjust enrichment.

## COUNT TWO
## (UNJUST ENRICHMENT)

41. ARUSTAMYAN re-alleges and incorporates by reference all the allegations of this Cross-Claim with the same force and effect as it fully restated herein.

42. As consideration and inducement for LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3 as discussed below, ARTYOM and GURGEN guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3, including but not limited to the Veto Estate. Said consent by ARTYOM and GURGEN is unconditional and extends to whatever properties, assets and belongings may be available

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

from which ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3.

43. In addition, the court in Armenia has granted ARUSTAMYAN'S request to allow a lien to be placed on all assets belonging to GURGEN, save those that are not subject to lien.

44. ARUSTAMYAN seeks equitable redress for CLAIMANTS' conduct in taking money from ARUSTAMYAN in furtherance of joint venture agreements for the purchase, renovation and re-sale of various real properties, including but not limited to the Veto Estate, which joint venture agreement the CLAIMANTS had no intention of honoring.

45. As a result of CLAIMANTS' wrongful acts and omissions, CLAIMANTS have been unjustly enriched to the detriment of ARUSTAMYAN.

## COUNT THREE
## (RESULTING TRUST)

46. ARUSTAMYAN re-alleges and incorporates by reference all the allegations of this Cross-Claim with the same force and effect as it fully restated herein.

47. As consideration and inducement for LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3 as discussed below, ARTYOM and guaranteed and pledged all properties, assets and belongings, of whatever nature to and in favor of ARUSTAMYAN, as security for LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3, including but not limited to the Veto Estate. Said consent by ARTYOM and GURGEN is unconditional and extends to whatever properties, assets and belongings may be available from which

45

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

ARUSTAMYAN may satisfy the sums due and owing pursuant to LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3.

48. Resulting Trust applies when a party gives money to another to purchase property and but where the lender is not on title. When a dispute arises over ownership of the property, the party who contributed money towards the purchase can rightfully allege a resulting trust.

49. ARUSTAMYAN and CLAIMANTS entered into joint venture agreements (LOAN NO. 1; LOAN NO. 2; and LOAN O. 3) to invest in real properties, including in the Property that is subject to Plaintiff's Complaint, the Veto Estate.

50. CLAIMANTS used ARUSTAMYAN'S funds totaling $42,244,000 to invest in real properties, including in the Property that is subject to Plaintiff's Complaint, the Veto Estate. As such, a Resulting Trust was created in favor of ARUSTAMYAN

## **REQUEST FOR RELIEF**

WHEREFORE, ARUSTAMYAN respectfully requests that this Court enter final judgment in his favor and against CLAIMANTS as follows:

a) For general, special and property damage in an amount to be determined at trial;

b) Reasonable attorney fees;

c) For an order declaring that ARUSTAMYAN has an equitable interest in the Veto Estate in the form of a resulting trust;

d) For retained monies in an amount according to proof, plus interest;

e) For such further relief as the Court deems just and equitable.

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

DATED: June 27, 2022          SHAGHZO & SHAGHZO LAW FIRM, LP

_____

Armen Shaghzo, Esq.
Attorney for Counter-Claimant/Cross-Claimant, SEDRAK ARUSTAMYAN

47

**SEDRAK ARUSTAMYAN'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, COUNTER CLAIM, AND CROSS CLAIM**

## VERIFICATION

I, SEDRAK ARUSTAMYAN, am the Claimant, Counter Claimant, and Cross-Claimant in the matter of the United States of America v. Real Property in Los Angeles, California, Case No. 2:22-CV-02902-jls-pd.

I have read the foregoing Verified Answer, Affirmative Defenses, Counter Claim, and Cross Claim, and I know the contents thereof. I declare based upon information and belief that the matters stated therein are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: June 27, 2022

_____
Sedrak Arustamyan, Declarant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of June, 2022, a copy of the foregoing was served via the Court's ECF' system upon all counsel of record.

Armen Shaghzo, Esq.

48.