1
CHRISTOPHER W. JAMES (SBN 289047)
cjames@velaw.com
2
Vinson & Elkins LLP
350 South Grand, Suite 2100
3
Los Angeles, CA 90071
555 Mission Street, Suite 2000
4
San Francisco, California 94105
Telephone: 415.979.6949
5
Facsimile: 415.651.8786

6
EPHRAIM WERNICK (admitted *pro hac vice*)
ewernick@velaw.com
7
PETER T. THOMAS (admitted *pro hac vice*)
petethomas@velaw.com
8
Vinson & Elkins LLP
2200 Pennsylvania Ave. NW, Suite 500 West
9
Washington, DC 20037
Telephone: 202.639.6500
10
Facsimile: 202.639.6604

11
*Attorneys for Claimants*
*Artyom Khachatryan, Gurgen Khachatryan, and WRH, Inc.*
12

13
**UNITED STATES DISTRICT COURT**

14
**CENTRAL DISTRICT OF CALIFORNIA**

15
UNITED STATES OF AMERICA,

16
Plaintiff.

17
v.

18
REAL PROPERTY IN LOS ANGELES,
CALIFORNIA,
19

20
Defendant,

21
and

22
ARTYOM KHACHATRYAN,
GURGEN KHACHATRYAN, and
23
WRH, INC.,

24
Claimants,

25
and

26
SEDRAK ARUSTAMYAN,

27
Claimant.

28

| | |
|---|---|
| Case No.: 2:22-cv-02902-JLS-PD | |

**VERIFIED CLAIMANTS
ARTYOM KHACHATRYAN,
GURGEN KHACHATRYAN, AND
WRH, INC.'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO
DISMISS CROSSCLAIM**

Date:      October 28, 2022
Time:      10:30 a.m.
Location:  Courtroom 8A
Judge:     Hon. Josephine L. Staton

Trial Date: None Set
Date Action Filed: May 2, 2022

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT .......................................................................1

II.     BACKGROUND ..............................................................................................3

III.    DISMISSAL WARRANTED IN FAVOR OF LITIGATION IN
        ARMENIA.........................................................................................................5

        A.      Abstention .............................................................................................6

        B.      *Forum Non Conveniens*........................................................................10

        C.      Venue for Arustamyan's Crossclaim is Improper ...............................13

IV.     DISMISSAL FOR FAILURE TO STATE A CLAIM ....................................13

        A.      Legal Standard for Rule 12(b)(6) Motion to Dismiss...........................14

        B.      California equitable claims are not proper remedies for
                Arustamyan ..........................................................................................15

                i.      The Loan Agreements dictate application of Armenian
                        law................................................................................................15

                ii.     Arustamyan has an adequate remedy at law for breach of
                        contract, rendering the sought equitable relief improper.............17

        C.      Arustamyan's unjust enrichment claim is precluded by the Loan
                Agreements and is improperly pleaded................................................18

        D.      Arustamyan's Crossclaim fails to plead a constructive trust.................20

        E.      Arustamyan cannot claim a resulting trust on the basis of funds
                that were expressly loaned to Claimants...............................................23

V.      CONCLUSION ..............................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Alcon Ent., LLC v. Autos. Peugeot SA,* No. CV 19-00245-CJC,
   2021 WL 2792435 (C.D. Cal. Feb. 26, 2021) ...................................... 6, 7, 9

*Am. Dredging Co. v. Miller,*
   510 U.S. 443 (1994) .......................................................................... 10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .......................................................................... 14

*Astiana v. Hain Celestial Gp., Inc.,*
   783 F.3d 753 (9th Cir. 2015) .......................................................... 18, 19

*Audrey Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974-JLS,
   2021 WL 819159 (C.D. Cal. Feb. 10, 2021) ........................................ 17

*Barranco v. 3D Systems Corp.,*
   952 F.3d 1122 (9th Cir. 2020) ........................................................... 18

*Benn v. Allstate Ins. Co.,*
   569 F. Supp. 3d 1029 (C.D. Cal. 2021) ............................................... 17

*Bos. Telecomm. Grp., Inc. v. Wood,*
   588 F.3d 1201 (9th Cir. 2009) ........................................................... 11

*Carijano v. Occidental Petroleum Corp.,*
   643 F.3d 1216 (9th Cir. 2011) ........................................................... 10

*Celador Int'l Ltd. v. Walt Disney Co.,*
   347 F. Supp. 2d 846 (C.D. Cal. 2004) ................................................. 22

*Challenge Printing Co., Inc. v. Elecs. for Imaging Inc.,*
   500 F. Supp. 3d 952 (N.D. Cal. 2020) ................................................ 20

*Cheng v. Boeing Co.,*
   708 F.2d 1406 (9th Cir. 1983) ........................................................... 10

*Christie Manson & Woods Ltd. v. Minor,*
   465 F. App'x 722 (9th Cir. 2012) ......................................................... 2

*Colorado River Conservation Dist. v. United States,*
   424 U.S. 800 (1976) ............................................................................ 6

*Communist Party v. 522 Valencia, Inc.,*
   35 Cal. App. 4th 980 (1995) .............................................................. 20

*Ebeid ex rel. United States v. Lungwitz,*
   616 F.3d 993 (9th Cir. 2010) ........................................................ 14, 19

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
   751 F.3d 990 (9th Cir. 2014) ............................................................. 14

*Elkay Int'l Ltd. v. Ltd. v. Color Image Apparel, Inc.,*
   No. CV 14-08028 MMM,
   2015 WL 13917734 (C.D. Cal. Feb. 4, 2015) ...................................... 18

*Fortaner v. Boeing Co.,*
   504 F. App'x 573 (9th Cir. 2013) ....................................................... 12

*Glue-Fold, Inc. v. Slautterback Corp.,*
   82 Cal. App. 4th 1018 (2000) ............................................................ 20

ii

*Harp v. Airblue*,
  879 F. Supp. 2d 1069 (C.D. Cal. 2012) ............................................................... 13

*Hedging Concepts, Inc. v. First All. Mortg. Co.*,
  41 Cal. App. 4th 1410 (1996) ............................................................................ 18

*Holder v. Holder*,
  305 F.3d 854 (9th Cir. 2002) ............................................................................... 6

*In re Air Crash at Madrid, Spain*,
  No. 2:10-ML-02135-GAF,
  2011 WL 2183972 (C.D. Cal. May 16, 2011) ................................................... 12

*In re Air Crash at Madrid, Spain, on Aug. 20, 2008*,
  893 F. Supp. 2d 1020 (C.D. Cal. 2011) ............................................................ 12

*In re Cedar Funding, Inc.*,
  408 B.R. 299 (Bankr. N.D. Cal. 2009) ........................................................ 23, 24

*Internet Direct Response, Inc. v. Buckley*,
  No. SA CV 09-1335 ABC,
  2011 WL 835607 (C.D. Cal. Mar. 7, 2011) ..................................................... 21

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ............................................................................. 15

*Lezinsky v. Mason Malt Whisky Distilling Co.*, 1
  96 P. 884 (1921) ................................................................................................ 23

*Lueck v. Sundstrand Corp.*
  236 F.3d 1137 (9th Cir. 2001) ........................................................................... 10

*Lund v. Albrecht*,
  936 F.2d 459 (9th Cir. 1991) ............................................................................. 20

*Majewsky v. Empire Constr. Co.*,
  2 Cal. 3d 478, 467 P.2d 547 (1970) .................................................................. 23

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) ............................................................................. 15

*Martin v. Kehl*,
  145 Cal. App. 3d 228 (Cal. Ct. App. 1983) ...................................................... 24

*Mattel, Inc. v. MGA Ent., Inc.*,
  616 F.3d 904 (9th Cir. 2010) ............................................................................. 20

*Melt Franchising, LLC. v. PMI Enters., Inc.*,
  No. CV 08-4148 PSG, 2009 WL 32587 (C.D. Cal. Jan. 2, 2009) ................... 16

*Meyer v. One W. Bank, F.S.B.*,
  91 F. Supp. 3d 1177 (C.D. Cal. 2015) .............................................................. 22

*Miskow v. Boeing Co.*,
  664 F.2d 205 (9th Cir. 1981) ............................................................................. 10

*Michaelian v. State Comp. Ins. Fund*,
  50 Cal. App. 4th 1093, 1114 (1996), *as modified* (Dec. 11, 1996) ............... 23

*Montanore Minerals Corp. v. Bakie*,
  867 F.3d 1160 (9th Cir. 2017) ..................................................................... 6, 7, 9

*Murphy v. Am. Gen. Life Ins. Co.*,
  74 F. Supp. 3d 1267 (C.D. Cal. 2015) ........................................................ 22, 24

iii

*Murphy v. Schneider Nat'l, Inc.*,
  362 F.3d 1133 (9th Cir. 2004) ........................................................................13

*Nedlloyd Lines B.V. v. Superior Court*,
  3 Cal. 4th 459 (1992) ....................................................................................16

*Palmco Corp.* v. *JSC Techsnabexport*,
  448 F. Supp. 1194 (C.D. Cal. 2006) ..............................................................10

*Paracor Fin., Inc. v. General Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ...................................................................15, 18

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro
  LLP*, 150 Cal. App. 4th 384 (2007) ..............................................................20

*Pitzer College v. Indian Harbor Ins. Co.*,
  8 Cal. 5th 93 (Cal. 2019) ...............................................................................16

*Puri v. Halsa*,
  674 Fed. App'x 679 (9th Cir. 2017) ...................................................14, 15, 19

*R.R. St. & Co. Inc. v. Transp. Ins. Co.*,
  656 F.3d 966 (9th Cir. 2011) ........................................................................7, 8

*Reid v. Gillespie*,
  87 Cal. App. 2d 769, 197 P.2d 566 (1948) ....................................................24

*Rowland v. Clark*,
  91 Cal. App. 2d 880, 206 P.2d 59 (1949) ......................................................23

*Schijndel v. Boeing Co.*,
  263 F. App'x 555 (9th Cir. 2008) ..................................................................12

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) .........................................................................17

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
  904 F.3d 667 (9th Cir. 2018) .........................................................................20

*United States v. Approximately $2,718,665.70 formerly on Deposit in
  Pershing, LLC.*, No. 11 CIV. 9176 VM,
  2013 WL 2393144 (S.D.N.Y. May 23, 2013) ...............................................10

*United States v. Gutierrez*,
  734 F. App'x 441 (9th Cir. 2018) ..................................................................23

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .........................................................................15

*Van Schijndel v. Boeing Co.*,
  434 F. Supp. 2d 766 (C.D. Cal. 2006) ...........................................................12

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .......................................................................14

**Statutes**

Cal. Com. Code § 9108 ........................................................................................2

Cal. Com. Code § 9203(b) ...................................................................................2

**Other Authorities**

Restatement (Second) of Trusts § 445 ...............................................................24

Restatement (Third) of Trusts § 7, comments b and c (2003) ...........................23

iv

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................14, 19, 20

Fed. R. Civ. P. 12(b)(3) ...................................................................................3, 13

Fed. R. Civ. P. 12(b)(6) .............................................................................3, 14, 15

Fed. R. Evid. 201 ...............................................................................................15

CASE NO.: 22-CV-02902-JLS-PD;
MEMORANDUM ISO OF MOTION TO DISMISS CROSSCLAIM

On June 27, 2022, Claimant Sedrak Arustamyan ("Arustamyan") filed a claim in this action by the United States ("Plaintiff" or the "Government") for forfeiture *in rem* against Real Property in Los Angeles, California (the "Property"). In answering the Government's Complaint, Arustamyan filed a crossclaim (the "Crossclaim") against Claimants Artyom Khachatryan ("Artyom"), Gurgen Khachatryan ("Gurgen"), and WRH, Inc. ("WRH") (collectively, "Claimants"). For the reasons explained in this Memorandum of Points and Authorities, Claimants respectfully request that the Court grant Claimants' Motion to Dismiss the Crossclaim.[1]

## I.   <u>PRELIMINARY STATEMENT</u>

Arustamyan's Crossclaim is based on precisely the same claims currently being litigated in six different civil actions between Arustamyan and Claimants in Armenia. He now seeks to improperly raise the same contract claims in the Government's forfeiture action being litigated before this Court. This matter has no business in a U.S. courtroom. The three loan agreements identified in the Crossclaim (collectively, the "Loan Agreements") are all contracts between Armenian citizens, negotiated and formed in Armenia, drafted in the Armenian language, guaranteed by personal assets available in Armenia, and, by their own terms, governed by Armenian law. The nature of the parties' dispute is whether the terms of the Loan Agreements have been satisfied, and the resolution of that dispute will be based on evidence of repayment in Armenia. This commercial dispute belongs in Armenia, where it is already the subject of ongoing litigation between the parties.[2]

---

[1] This motion is made following a conference with counsel for Arustamyan pursuant to L.R. 7-3. The conference took place by phone on Thursday, July 7, 2022.

[2] Notably, Arustamyan's Crossclaim and the several actions being actively litigated in Armenia demonstrate the legitimacy of the Loan Agreements in question. Far from being "sham loan agreements" without expectation of repayment, as the Government has alleged in the underlying forfeiture complaint, the pending litigation shows that Arustamyan very much expected to be repaid under the terms of the Loan Agreements. As noted below and in multiple filings in Armenia, Claimants have repaid Arustamyan in full, but Arustamyan contests this fact. This ongoing dispute should and will be resolved in an Armenian courtroom and should not serve as a sideshow to the instant forfeiture action.

Procedurally, the Crossclaim is improper under the doctrines of abstention and *forum non conveniens*, as well as improper venue, each of which independently provides a sufficient basis for this Court to dismiss. The same issues, contracts, and property interests are already being litigated in Armenia, which is the situs of the contract formation, the parties, the relevant evidence and witnesses, and the favored jurisdiction identified in the Loan Agreements. Even the manner in which Arustamyan brought his Crossclaim is a distortion of supplemental jurisdiction and venue principles. Arustamyan should not even be a party to this civil asset forfeiture litigation, as he has no vested interest in the Property. Rather, he voluntarily injected himself into the proceedings and is burdening this Court with a Counter- and Cross-claim that he otherwise has no independent standing to bring. The nature of the Crossclaim belies Arustamyan's presence in this action: they are requests to have this Court *create* a vested interest in the Property under equitable California relief doctrines. He therefore puts the proverbial cart before the horse; the interest he seeks is the very thing that would be needed for him to appear and file a claim in the underlying forfeiture action in the first place.[3]

Substantively, Arustamyan improperly brings a series of claims under California equitable relief doctrines, even though (i) the Loan Agreements already provide for adequate legal remedies, and (ii) the parties expressly agreed upon application of Armenian law to govern any disputes arising from the agreements. Even if California law were to apply, the specific causes of action brought by Arustamyan fail to state a

---

[3] Arustamyan lacks standing to assert his claim in the underlying forfeiture action because his claim is based on an unvested interest in the Property. *See* Cal. Com. Code § 9203(b) (providing that a security interest is only enforceable under a security agreement if certain conditions are met); § 9108 (governing the sufficiency of descriptions of property for secured transactions and providing that "[a] description of collateral as 'all the debtor's assets' or 'all the debtor's personal property' or using words of similar import does not reasonably identify the collateral"); *see also Christie Manson & Woods Ltd. v. Minor*, 465 F. App'x 722, 724 (9th Cir. 2012) (finding that collateral acquired after a security agreement was executed was not reasonably identified in a security agreement that described an interest in "any property in [Appellant's] possession owned by the buyer").

CASE NO.: 22-CV-02902-JLS-PD;
MEMORANDUM ISO OF MOTION TO DISMISS CROSSCLAIM

claim because they require this Court to ignore the existence and effect of valid enforceable contracts.  Moreover, Arustamyan fails to allege an underlying fraud, breach of duty, or the specific intent necessary to support claims for unjust enrichment and constructive and resulting trust.

Put simply, Arustamyan's Crossclaim is nothing more than a contract dispute, where the only shortcoming identified in the Crossclaim is a vague allegation that "CLAIMANTS failed to perform under LOAN NO. 1; LOAN NO. 2, and LOAN NO. 3".  Crossclaim ¶ 20.  Respectfully, this Court should reject Arustamyan's invitation to circumvent the plain language of the Loan Agreements at issue, and allow the parties to continue litigating their dispute in the proper (and first-selected) forum of Armenia. Claimants therefore respectfully request that this Court dismiss Arustamyan's Crossclaim under the doctrines of abstention and *forum non conveniens*, as well as Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6).

## II.   <u>BACKGROUND</u>

The factual background of the Khachatryan brothers' property investment ventures in California has been the subject of extensive recent briefing.  In sum, the Khachatryan brothers (two successful entrepreneurs in Armenia, and owners of the Galaxy Group of companies) recognized an opportunity for real estate investment in California in the wake of the United States' subprime mortgage recession of 2008.  The brothers approached various business contacts in Armenia's small and close-knit business community, including Arustamyan, to obtain loans to finance their venture. In 2009, Arustamyan agreed to enter a loan agreement with the brothers for $7,000,000 ("Loan No. 1").  Crossclaim ¶ 8, ECF No. 20.  Rather than tying Arustamyan's return to the success or failure of the brothers' property investments—which would have distributed the risk of the yet-unproven investment across all parties—Arustamyan instead agreed to structure his investment as a personal loan carrying a 4% annual interest rate, penalties for late repayment, guaranteed by the personal assets of Artyom

and Gurgen.  Crossclaim ¶¶ 7-9, Ex. A, at Sec. 1.2, 3.2.3, 2.1-2.2.  As pleaded, the repayment date of Loan No. 1 was extended multiple times, as the brothers found success and continued to reinvest in the California real estate market.  In consideration for the extensions, Arustamyan was thus entitled to additional interest payments under the terms of the personal loan.  The same structure was agreed to for the subsequent personal loans between the parties, again with extensions that contemplated repayment in or around 2019.  Crossclaim ¶¶ 12-17, Ex. B-C.  In each case, the agreements are expressly structured as personal loans, with the promised return of 4% interest—citing no relation to any use of the funds or resulting interest in a specific asset or business venture.[4]  Notably, what Arustamyan calls "Loan No. 2" is not even alleged to have any relation to the U.S. real estate ventures.  And when Arustamyan transferred the funds from what he calls "Loan No. 3" for the Khachatryan brothers' use in purchasing the Property at issue in this matter, he expressly disclaimed a titled ownership interest in the Property.  Complaint ¶ 45, ECF No. 1.

These were all contracts negotiated in Armenia, formed in Armenia, among Armenian citizens and residents, in the Armenian language, concerning funds that were held by Arustamyan in his Armenia bank accounts.  Crossclaim ¶¶ 5-6, 18, Ex. A-C. The plain language of the Loan Agreements requires that any additions or amendments to agreements be in writing and signed by the parties.  Crossclaim Ex. A, at Sec. 6.2.

---

[4]  Arustamyan may regret structuring his investment in this manner, given the substantial success Artyom and Gurgen have had with their real estate ventures.  But that is not a basis for him to unilaterally rewrite the terms of their agreements as a "joint venture."  The Crossclaim fails to allege the formation of any such separate agreement among the parties, instead pointing only to an inadmissible and inaccurate translation of statements Gurgen gave during an interrogation by Armenia's National Security Service.  Crossclaim ¶¶ 26-27.  Gurgen never described his business relationship with Arustamyan as a "joint venture." Moreover, the Crossclaim identifies no such formal joint venture agreement, describes no separate terms, and, significantly, does not even identify what Arustamyan's claimed interest is supposed to be.  Instead, the Crossclaim repeatedly equates the so-called joint venture agreements with the loan agreements Arustamyan is seeking to enforce.  See, e.g., Crossclaim ¶ 49 ("ARUSTAMYAN and CLAIMANTS entered into joint venture agreements (LOAN NO. 1; LOAN NO. 2; and LOAN NO. 3) to invest in real properties … ").  There were no separate agreements or terms concerning the Khachatryan brothers' real estate investments, and nothing pleaded by Arustamyan plausibly suggests otherwise.

CASE NO.: 22-CV-02902-JLS-PD;
MEMORANDUM ISO OF MOTION TO DISMISS CROSSCLAIM

The parties also agreed that disputes, including those not expressly considered by the contracts' terms, were to be "determined by [Republic of Armenia] legislation." *Id.*

The only purported misconduct identified in the Crossclaim is the vague assertion that Artyom and Gurgen "failed to perform" under the terms of these Loan Agreements. Crossclaim ¶ 20. This is an area of dispute among the parties; Artyom and Gurgen have indeed repaid the loans in full, plus interest, and they received signed receipts from Arustamyan stating that their obligations were fully satisfied. Of course, all of this occurred in Armenia and is the subject of pending litigation in Armenia. *See* Declaration of Christopher W. James in Support of Motion to Dismiss Crossclaim ("James Decl."), ¶¶ 3-10, Exhibits A-G.[5]

The appropriate remedy for the alleged failure to perform under the Loan Agreements is through enforcement of the contracts themselves in the ongoing litigation in Armenia. The Crossclaim identifies three actions filed by Arustamyan, including two forced bankruptcy actions and an action to confiscate personal funds from the Khachatryan brothers on the basis of the very same Loan Agreements he seeks to enforce this action. Crossclaim ¶¶ 21, 25; *see also* James Decl., ¶¶ 4-7, Exhibits A-E (filings from the bankruptcy applications civil lawsuit described in the Crossclaim). There are also three other actions pending in the Yerevan Court of General Jurisdiction and the Kotayk Court of General Jurisdiction concerning whether or not the parties' relevant obligations have already been satisfied. *See* James Decl., ¶¶ 9-10, Exhibits F, G (filings from additional related civil lawsuits filed by Arustamyan and the Khachatryan brothers, respectively).

## III.   DISMISSAL WARRANTED IN FAVOR OF LITIGATION IN ARMENIA

The issues raised in the Crossclaim do not belong in this forfeiture case for numerous reasons. Dismissal under the abstention doctrine is appropriate because Arustamyan's Crossclaim is essentially a contract dispute between Armenian citizens

---

[5] These exhibits are being offered in support of Claimants' abstention and *forum non conveniens* arguments only at this stage in the litigation.

CASE NO.: 22-CV-02902-JLS-PD;
MEMORANDUM ISO OF MOTION TO DISMISS CROSSCLAIM

1    regarding Armenian loan contracts governed by Armenian law that is currently the
2    subject of multiple legal actions pending before Armenian courts.  Similarly, dismissal
3    under the *forum non conveniens* doctrine is warranted because any claims relating to
4    the Loan Agreements would be most appropriately brought before Armenian courts.
5    The parties expressly recognized as much in the Loan Agreements at issue, each of
6    which contain forum and choice of law provisions favoring Armenia as the proper
7    venue.

8    ### A.    Abstention

9    Arustamyan's Crossclaim is a misguided attempt to bring his ongoing Armenian
10   litigation against Artyom and Gurgen into another jurisdiction.  This matter is a dispute
11   between Armenian parties to Armenian contracts with Armenian choice of law
12   provisions that were entered in Armenia and that are currently the subject of litigation
13   before Armenian courts.

14   Under the abstention doctrine, this Court may decline to exercise jurisdiction
15   and dismiss an action in deference to parallel proceedings pending in a foreign
16   jurisdiction.  *See Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (citing *Colorado*
17   *River Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *Montanore*
18   *Minerals Corp. v. Bakie*, 867 F.3d 1160, 1165 (9th Cir. 2017).   Under certain
19   circumstances that are present, considerations of "wise judicial administration[,]
20   conservation of judicial resources[,] and the comprehensive disposition of litigation"
21   warrant abstention.  *Alcon Ent., LLC v. Autos. Peugeot SA,* No. CV 19-00245-CJC,
22   2021 WL 2792435, at *1 (C.D. Cal. Feb. 26, 2021) (citing *Colorado River*, 424 U.S.
23   at 817-18).  The Ninth Circuit has identified a multi-factor analysis bearing on whether
24   exceptional circumstances exist to warrant an abstention in a given case:

25       (1) which court first assumed jurisdiction over any property
26       at stake; (2) the inconvenience of the federal forum; (3) the
         desire to avoid piecemeal litigation; (4) the order in which the
27       forums obtained jurisdiction; (5) whether federal law or [the
         foreign jurisdiction's] law provides the rule of decision on the
28

6

CASE NO.: 22-CV-02902-JLS-PD;
MEMORANDUM ISO OF MOTION TO DISMISS CROSSCLAIM

> merits; (6) whether the [foreign] court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the [parallel] court proceedings will resolve all issues before the court.

*Montanore*, 867 F.3d at 1166 (quoting *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 973 (9th Cir. 2011)).  Each of the abstention factors considered by the Ninth Circuit weighs in favor of dismissing the Crossclaim.

Factors one and four weigh in favor of dismissal, as the Armenian courts have already assumed jurisdiction over the issues and property allegedly at stake.  The Crossclaim is substantively identical to multiple actions that Arustamyan has already brought and that are still pending in Armenia—each asserting the Khachatryan brothers failure to perform under the same three Loan Agreements.  Complaint ¶¶ 21, 25; *see Alcon Ent.*, 2021 WL 2792435, at *3 (weighing pending parallel litigation in favor of dismissal).  Arustamyan is not entitled to any remedy arising from his contract dispute over the Loan Agreements, but to the extent he would be entitled to something, it would be *monetary* damages for breach of contract, not a vested interest in the Property.  As repeatedly admitted by Arustamyan, the Loan Agreements were not secured by the Property, but were generally guaranteed by all personal assets of the Khachatryan brothers.  Crossclaim ¶¶ 7, 9, 13, 16.  Arustamyan is already engaged in six judicial proceedings in Armenia specifically targeting the same pool of general assets (including one brought by Artyom and Gurgen for judicial recognition that they have repaid the Loan Agreements in full), *see* James Decl., Exhibits A-G, and claims an Armenian court placed a "lien" on Gurgen's undefined personal assets in one of those proceedings.[6]  Crossclaim ¶¶ 24-25.

Factor two also weighs in favor of dismissal, as the Central District of California is a profoundly inconvenient forum to resolve Arustamyan's Crossclaim.  As explained above, all of the parties are Armenian citizens, none of the parties reside in the United

---

[6] Arustamyan failed to allege that this decision has been appealed.  *See* James Decl., Exhibit D.

States, most (if not all) of the material witnesses and evidence are likely in Armenia, the Loan Agreements are written in Armenian and are governed by Armenian law, *see* Crossclaim Exs. A-C (each at Secs. 4.1, 6.3), and the travel costs and time difference make regular and ordinary communication with U.S. counsel unnecessarily burdensome as compared to communication with counsel in Armenia.

Third, Arustamyan has filed actions in Armenia arising out of the same events as his Crossclaim, *see* Crossclaim ¶¶ 21, 25, and as a result, permitting the Crossclaim in this Court would unnecessarily result in piecemeal litigation that would require this Court to needlessly duplicate the work of the Armenian courts and potentially reach conflicting judgments. This Court may properly weigh the avoidance of duplication and piecemeal litigation *significantly* against exercising jurisdiction over this matter. *R.R. St. & Co. Inc.*, 656 F.3d at 980.

Factor five weighs in favor of dismissal because Arustamyan's Crossclaim is controlled by Armenian law. As explained more fully in Section IV.B.i, *infra*, the Loan Agreements were entered in Armenia and contain choice of law provisions stating that Armenian legislation governs all disputes relating to the non-fulfillment or improper fulfillment of obligations arising under the Loan Agreements. Crossclaim Exs. A-C (each at Sec. 4.1) ("The Parties shall bear responsibility for failure or undue execution of the contractual liabilities by the order, determined by the present Contract or *RA Legislation*." (emphasis added)); Crossclaim Exs. A-C (each at Sec. 6.3) ("The relations not regulated by the present Contract shall be regulated by the order, determined by [Republic of Armenia] Legislation."). As such, Armenian law governs Arustamyan's Crossclaim.

Under factor six, Armenian courts are fully capable of protecting Arustamyan's rights. Arustamyan has conceded as much by citing the multiple legal proceedings he initiated in Armenia against Artyom and Gurgen. Crossclaim ¶¶ 21, 25. Arustamyan even alleges that he prevailed in one of these actions, *see* Crossclaim ¶ 24, and he never

suggests that Armenian courts are incapable of protecting his rights to merit a need to bring suit in the United States. Armenian courts have "authority to address [his] rights and remedies," *Montanore*, 867 F.3d at 1169, and because he has already initiated litigation there, *see* James Decl. Exhibits A-F, this factor weighs in favor of this Court dismissing Arustamyan's claims.

Abstention by this Court would also stop Arustamyan's attempted forum shopping. By intervening in a civil forfeiture action, Arustamyan improperly seeks to use this Court's supplemental jurisdiction to bring claims that mirror legal actions he already initiated halfway around the world and that he otherwise could not bring here. Crossclaim ¶¶ 21, 25. Arustamyan's improper Crossclaim is a plain attempt to jump the line instead of waiting to secure, then properly enforce, a definitive judgment in one of the several Armenian courts in which he is suing Artyom and Gurgen at this time. This factor weighs heavily in favor of dismissal.

Finally, the parallel proceedings in Armenia will comprehensively dispose of Arustamyan's claims once they are resolved. The Crossclaim seeks to enforce an alleged right to obtain property from Artyom and Gurgen in satisfaction of the Loan Agreements. Crossclaim ¶¶ 30, 44, 50. This is exactly what Arustamyan is claiming in the pending cases in Armenia. *See* James Decl., Exhibits A-F. Arustamyan's Crossclaim and Armenian cases alike ultimately depend on the interpretation, formation, enforceability, and sufficiency of repayments made under of the Loan Agreements. The Armenian proceedings will resolve these issues. *See Alcon Ent.*, 2021 WL 2792435, at *3.

Arustamyan should not be permitted to bring *yet another* action, this time in U.S. federal court, to litigate the claims he has already raised in Armenia. Claimants respectfully request that this Court decline to exercise jurisdiction under the abstention doctrine and dismiss Arustamyan's improperly filed Crossclaim with prejudice.

### B.   *Forum Non Conveniens*

This Court also should dismiss the Crossclaim under the doctrine of *forum non conveniens*, which allows a district court to dismiss an action that would be more appropriately brought in a foreign forum, based on a multi-factor analysis weighing both public and private interests. *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994).[7]  To prevail, the movant must show the existence of "an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).

First, not only is Armenia an adequate alternative forum, it is the proper forum for the Crossclaim.  As explained above, Arustamyan is a resident of Armenia, *see* Crossclaim ¶ 5, and both he and Claimants Artyom and Gurgen are subject to process in that jurisdiction, and that jurisdiction offers a satisfactory remedy.  *Carijano*, 643 F.3d at 1225.  The parties expressly agreed that any claims arising under the Loan Agreements would be governed by "[the Republic of Armenia's] legislation," *see* Crossclaim Exs. A-C (each at Secs. 4.1, 6.3), and so agreed that whatever remedy is offered under Armenian law is appropriate.  Indeed, Arustamyan is currently pursuing these remedies before Armenian courts.  Crossclaim ¶¶ 21, 25.

As to the balance of interests, courts evaluate whether (1) the oppression and vexation of a defendant is out of proportion to the plaintiff's convenience, and (2) trial in the chosen forum would be inappropriate because of considerations affecting the court's own administrative and legal problems.  *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983) (quoting *Miskow v. Boeing Co.*, 664 F.2d 205, 208 (9th Cir.

---

[7] While a plaintiff's choice of forum is ordinarily given deference, *see Palmco Corp. v. JSC Techsnabexport*, 448 F. Supp. 1194, 1198 (C.D. Cal. 2006) (citing *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001)), Arustamyan's so-called venue "choice" is not entitled to any deference here because his is a cross-claim plaintiff.  *See, e.g.*, *United States v. Approximately $2,718,665.70 formerly on Deposit in Pershing, LLC.*, No. 11 CIV. 9176 VM, 2013 WL 2393144, at *2 n.1 (S.D.N.Y. May 23, 2013) (finding that cross-claim plaintiffs' choice of forum "is not entitled to deference, because their cross-claims came before the Court only in connection with" a forfeiture complaint).

1981)).  Factors relevant to the first category—the balance of private interests of the litigants—include the parties' and witnesses' residence, the forum's convenience to the litigants, the cost of bringing witnesses to court, access to the evidence and ability to compel witness testimony, and "all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Bos. Telecomm. Grp., Inc. v. Wood*, 588 F.3d 1201, 1206-07 (9th Cir. 2009).  Factors relevant to the second category—the public and Court's interests—include the local interest in the lawsuit, familiarity with the governing law, the administrative burden on the Court and jury pool, congestion in the court, and cost.  *Id.* at 1211.  As with the abstention doctrine, a review of these factors weighs conclusively in favor of dismissal.

The private interest factors unquestionably favor dismissal in favor of this matter being heard in Armenia.  Arustamyan, Artyom, and Gurgen all reside in foreign countries.  Crossclaim ¶ 5; Answer of Claimants ¶ 35, ECF No. 25.  Most, if not all, material witnesses and material evidence are likely in Armenia.  This includes witnesses and evidence of the negotiation and formation of the Loan Agreements, as well as Artyom and Gurgen's repayment of the loans.  There would be significant time and monetary costs related to the parties' and witnesses' travel to the United States for the proceedings, and significant time differences that complicate ordinary and regular communications between U.S. counsel, the parties, and third parties.  Uncooperative witnesses or custodians of relevant documents may be beyond the reach of this Court's power to compel, forcing the parties to rely on the slow and burdensome letters rogatory process.  There is also significant time, expense, and risk of misinterpretation caused by the need to translate much of the relevant documentation and witness testimony from Armenian language.  These burdens do not exist for the pending Armenian litigation.

Moreover, this forum is *not* of any particular convenience to Arustamyan, who is subject to the same inconveniences as Artyom and Gurgen and presently has the

---

11

benefit of his claims being heard in his home jurisdiction. *See* James Decl., Exhibits A-F.   The inefficiency of this Court hearing Arustamyan's Crossclaim while substantively identical litigation is pending in Armenia weighs in favor of dismissal. "Actions pending in a foreign forum should be taken into account by courts, as the doctrine of *forum non conveniens* was designed in part to avoid these inconveniences." *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 780 (C.D. Cal. 2006), *aff'd sub nom. Schijndel v. Boeing Co.*, 263 F. App'x 555 (9th Cir. 2008).

Likewise, the public interest factors strongly favor dismissal on *forum non conveniens* grounds.   There is no local interest in Arustamyan's Crossclaim, which is essentially a breach of contract claim concerning contracts between Armenian citizens that are governed by Armenian law.   While the Property is located within this jurisdiction, its connection to Arustamyan's Crossclaim is incidental.   Arustamyan is improperly using this forfeiture action to try and seize unsecured collateral for the allegedly unpaid balance of the Loan Agreements.   This district has no local interest in what is essentially a contract dispute between foreign parties; there is no reason that U.S. taxpayers should bear the cost of resolving Arustamyan's Crossclaim, given that the local interest is, at best, *de minimis*.   As explained more fully in Section IV.B.i, *infra*, the Loan Agreements are governed by Armenian law, and because Arustamyan's Crossclaim is based on the alleged breach of these agreements, the Crossclaim is governed by Armenian law, as well.   This factor also weighs in favor of dismissal. *See In re Air Crash at Madrid, Spain, on Aug. 20, 2008*, 893 F. Supp. 2d 1020, 1040 (C.D. Cal. 2011), *amended on reconsideration in part sub nom. In re Air Crash at Madrid, Spain*, No. 2:10-ML-02135-GAF, 2011 WL 2183972 (C.D. Cal. May 16, 2011) *and aff'd sub nom. Fortaner v. Boeing Co.*, 504 F. App'x 573 (9th Cir. 2013) ("The mere likelihood or possibility that foreign law would apply weighs in favor of dismissal."). Armenia undoubtedly has the greater interest in Arustamyan's Crossclaim, given the overwhelming ties to that country, and as such, Armenia should bear the cost of

CASE NO.: 22-CV-02902-JLS-PD;
MEMORANDUM ISO OF MOTION TO DISMISS CROSSCLAIM

1   Arustamyan's litigation. *Harp v. Airblue*, 879 F. Supp. 2d 1069, 1078-79 (C.D. Cal.

2   2012). This is especially true here, given that the Central District of California has one

3   of the most overburdened dockets in the country. The Court's already-crowded docket

4   should not be burdened with claims arising out of an Armenian contract dispute when

5   Armenian courts have a far greater interest in the dispute and are already entertaining

6   litigation arising from the exact same facts and issues.

7       For these reasons, Claimants respectfully request that this Court dismiss

8   Arustamyan's Crossclaim on *forum non conveniens* grounds.

9       **C.   Venue for Arustamyan's Crossclaim is Improper**

10      Arustamyan's Crossclaim is also subject to dismissal pursuant to Federal Rule

11  of Civil Procedure 12(b)(3) as improperly brought in this venue. Arustamyan's

12  Crossclaim arises out of the Loan Agreements, each of which has a venue selection

13  clause requiring that and disputes arising out of the Loan Agreements be litigated

14  before "the appropriate court." Crossclaim Exs. A-C (each at Sec. 5.2). As explained

15  in Section IV.B.i, *infra*, the appropriate court for any claims arising from these

16  agreements is in Armenia. Indeed, Arustamyan has conceded as much by filing

17  multiple legal actions in Armenia arising from the alleged breach of the Loan

18  Agreements. *See*, *e.g.*, Crossclaim ¶¶ 21, 25. Such forum selection clauses are

19  presumptively valid and "should be honored absent some compelling and

20  countervailing reason." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir.

21  2004). No exception to this general presumption applies here. *See id.* Therefore,

22  dismissal of the Crossclaim under Rule 12(b)(3) is appropriate.

23  **IV.   DISMISSAL FOR FAILURE TO STATE A CLAIM**

24      Arustamyan's Crossclaim also should be dismissed because it fails to state a

25  claim for which relief could be granted. Arustamyan's Crossclaim is nothing more

26  than a breach of contract action, yet he asserts inapplicable doctrines of California

27  equitable relief that he forces before this Court on the coattails of the Government's

28

13

forfeiture action.  The Court can dismiss these California equity claims based simply on the availability of contract remedies and the parties' unambiguous choice of law provisions in the Loan Agreements, which clearly dictate application of Armenian law. But even assuming Arustamyan could bring California equity claims for the alleged breach of an Armenian contract by Armenian counterparties, the Crossclaim fails to adequately plead all three counts.

### A.    Legal Standard for Rule 12(b)(6) Motion to Dismiss

A complaint that does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not survive a motion to dismiss under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *accord Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).  A plausible claim "plead[s] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citations omitted).  Conclusory allegations are not entitled to a presumption of truth on a motion to dismiss, and a plaintiff "armed with nothing more than conclusions" or "[t]hreadbare recitals of the elements of a cause of action" fails to state a claim.  *Id.* at 678-81.

Allegations that sound in fraud or mistake are subject to a heightened pleading standard that requires the plaintiff to plead with "particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  In other words, the complaint must plead "the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false."  *Puri v. Halsa*, 674 Fed. App'x 679, 687 (9th Cir. 2017) (citing *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)) (internal quotation marks omitted).  Broad allegations without "particularized supporting detail do not suffice."  *Id.*  Regardless of whether fraud is an essential element of a claim, "particular averments of fraud" or allegations "sound[ing] in fraud" are subject to Rule 9(b).  *Vess v. Ciba-Geigy Corp.*

1  *USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  This extends to claims of unjust enrichment.
2  *Puri*, 674 Fed. App'x at 690.

3      When ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider the
4  facts alleged in the pleading, documents incorporated into the pleading by reference,
5  and documents subject to judicial notice.  *See* Fed. R. Evid. 201; *Khoja v. Orexigen*
6  *Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  Documents incorporated by
7  reference are treated as "part of the complaint, and thus [the Court] may assume that
8  its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Marder*
9  *v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citing *United States v. Ritchie*, 342 F.3d
10 903, 908 (9th Cir. 2003)).

11     **B.    California equitable claims are not proper remedies for Arustamyan**
12     The first reason that Arustamyan's Crossclaim fails is that the parties expressly
13 agreed that the Loan Agreements (and any alleged breaches) are governed by Armenian
14 legislation.  Yet the Crossclaim only alleges causes of action for equitable relief under
15 California law.  Arustamyan's failure to plead causes of action under the legislation
16 that actually governs this dispute is thus fatal to the Crossclaim.

17         **i.    The Loan Agreements dictate application of Armenian law**
18     As this matter is before the Court on federal question jurisdiction, California's
19 choice of law rules apply.  *See Paracor Fin., Inc. v. General Elec. Cap. Corp.,* 96 F.3d
20 1151, 1164 (9th Cir. 1996).  Each of the Loan Agreements attached to Arustamyan's
21 Crossclaim contain the same choice of law provisions: "The Parties shall bear
22 responsibility for failure or undue execution of the contractual liabilities by the order,
23 determined by the present Contract or [Republic of Armenia] Legislation," and "The
24 relations not regulated by the present Contract shall be regulated by the order,
25 determined by [Republic of Armenia] Legislation."  Crossclaim Exs. A-C (each at
26 Secs. 4.1, 6.3).

27
28

1    California enforces contractual choice of law provisions so long as (1) the chosen

2    forum has a "substantial relationship to the parties or their transaction" or (2) there is

3    "a reasonable basis for the parties' choice of law." *Pitzer College v. Indian Harbor*

4    *Ins. Co.*, 8 Cal. 5th 93, 101 (Cal. 2019).  To the extent this test is met, the court must

5    then determine whether "the chosen [forum's] law is contrary to a *fundamental* policy

6    of California," and—if so—"whether California has a materially greater interest than

7    the chosen state in the determination of the particular issue." *Id.* at 101. (emphasis in

8    original) (internal citations omitted).

9        There is a substantial relationship between the parties and the Republic of

10   Armenia, as the parties are all Armenian citizens, the contract was negotiated and

11   formed there, and Arustamyan continues to reside there.  *See* Crossclaim ¶ 5, Ex. A-C;

12   *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 467 (1992).  For these reasons,

13   there is also a reasonable basis for the parties' choice of Armenian law in the Loan

14   Agreements.  In addition, application of Armenian law to the parties' dispute would

15   not be contrary to "a fundamental policy of California," as California does not have

16   any fundamental policy requiring the application of California law to traditional

17   contract-based claims.  *See Nedlloyd*, 3 Cal. 4th at 468 (explaining that California was

18   ambivalent toward application of California law to claims of breach of the implied

19   covenant of good faith and fair dealing).  Accordingly, this Court should find

20   Arustamyan's breach of contract claims are governed by Armenian law.

21       According to California courts, "when two sophisticated [parties] agree to a

22   choice-of-law clause . . . , the most reasonable interpretation of their actions is that they

23   intended for the clause to apply to all causes of action arising from or related to their

24   contract." *Id.* (holding that choice of law provision stating that "agreement shall be

25   governed by and construed in accordance with Hong Kong Law" encompassed fraud,

26   negligence and trade secret claims); *accord. Melt Franchising, LLC. v. PMI Enters.,*

27   *Inc.*, No. CV 08-4148 PSG, 2009 WL 32587, at *3 (C.D. Cal. Jan. 2, 2009) (finding

28

16

that choice of law provision governing "the relationship between the parties" clearly contemplated any dispute).

Here, the parties are sophisticated businessmen and the terms of their Loan Agreements dictate that Armenian legislation applies to any dispute relating to the improper fulfillment or non-fulfillment of the obligations arising under the Loan Agreements.   Crossclaim Exs. A-C (each at Secs. 4.1, 6.3).   This provision is sufficiently broad to cover the allegations Arustamyan now brings before this Court.

Arustamyan's Crossclaim, however, fails to state any claim arising under Armenian law, bringing instead doctrinal theories under California law.   The Crossclaim contains no reference nor citation to any Armenian legislation, nor anything else to indicate whether the alleged causes of action even exist under Armenian law. As such, Claimants respectfully request this Court dismiss Arustamyan's Crossclaim because it fails to plead any claim for which Arustamyan could be entitled to relief.

### ii.   Arustamyan has an adequate remedy at law for breach of contract, rendering the sought equitable relief improper

It is also generally improper for Arustamyan to pursue the forms of equitable relief sought when the nature of the dispute—failure to perform under the Loan Agreements—would have an adequate remedy at law.   Under "[t]he traditional principles governing equitable remedies in federal courts," equitable remedies are only available where plaintiff lacks an adequate remedy at law. *Audrey Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974-JLS, 2021 WL 819159, at *3 (C.D. Cal. Feb. 10, 2021) (Staton, J.) (quoting *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)) (dismissing equitable restitution claim brought under California's Unfair Competition statute where plaintiffs were able to make claims for damages).

This includes the situation here, where Arustamyan can make claims for breach of the Loan Agreements. *Benn v. Allstate Ins. Co.*, 569 F. Supp. 3d 1029 (C.D. Cal. 2021) (holding that plaintiff's breach of contract and insurance bad faith claims were

1  adequate remedies of law that precluded relief under California's Unfair Competition
2  statute); *Barranco v. 3D Systems Corp.*, 952 F.3d 1122 (9th Cir. 2020) (reversing
3  equitable accounting granted at bench trial phase of action for breach of covenant not
4  to compete because contract damages were adequate remedy at law).   Indeed, as
5  explained above, Arustamyan is already seeking relief under the Loan Agreements in
6  Armenia.   It is therefore neither necessary nor proper for Arustamyan to pursue
7  equitable relief where the nature of the dispute is already subject to traditional contract
8  remedies.

9      **C.    Arustamyan's unjust enrichment claim is precluded by the Loan
10          Agreements and is improperly pleaded**

11      Arustamyan's claim for unjust enrichment in Count Two of the Crossclaim also
12  fails to state a claim for which relief can be granted because there is no standalone
13  cause of action for unjust enrichment in California.  *Astiana v. Hain Celestial Gp., Inc.*,
14  783 F.3d 753, 762 (9th Cir. 2015).  Instead, unjust enrichment, which is synonymous
15  with restitution, is a remedy available in a quasi-contract action.  *See id.*  However,
16  recovery under a quasi-contract claim is generally precluded where, as here, "an
17  enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin.,
18  Inc.*, 96 F.3d at 1167.

19      Here, the basis of Arustamyan's claims is the Loan Agreements, all of which are
20  written agreements attached to and incorporated by reference into his Crossclaim.  See
21  Crossclaim Exs. A-C.  This Court cannot allow Arustamyan to contort what is
22  obviously an unpleaded breach of contract claim into a claim in quasi-contract for
23  unjust enrichment.  *See Elkay Int'l Ltd. v. Ltd. v. Color Image Apparel, Inc.*, No. CV
24  14-08028 MMM, 2015 WL 13917734, at *9-10 (C.D. Cal. Feb. 4, 2015); *Hedging
25  Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1420 (1996) ("When
26  parties have an actual contract covering a subject, a court cannot – not even under the
27  guise of equity jurisprudence – substitute [its] own concepts of fairness regarding that

28

CASE NO.: 22-CV-02902-JLS-PD;
MEMORANDUM ISO OF MOTION TO DISMISS CROSSCLAIM

1  subject in place of the parties' own contract.").  The existence of valid, enforceable

2  contracts underlying this dispute is fatal to Count Two of Arustamyan's Crossclaim.

3      Arustamyan also fails to sufficiently plead facts that would justify his recovery

4  for unjust enrichment even if that were an available form of relief.  Under California

5  law, unjust enrichment occurs where a "defendant has been unjustly conferred a benefit

6  through mistake, fraud, coercion or request" and at plaintiff's expense.  *Astiana*, 783

7  F.3d at 762.  However, Arustamyan alleges no actual misconduct and instead alleges

8  only that Claimants failed to perform under the Loan Agreements.

9      At its most strained interpretation, Count Two of the Crossclaim sounds in fraud,

10  given the unfounded allegation that Artyom and Gurgen induced him to enter the Loan

11  Agreements that Artyom and Gurgen "had no intention of honoring."  Crossclaim ¶ 44.

12  Beyond this conclusory allegation, the Crossclaim fails to plead any particular facts

13  and circumstances that constitute the allegedly fraudulent conduct.  Unjust enrichment

14  claims that sound in fraud must satisfy Rule 9(b)'s heightened pleading requirements

15  and Arustamyan's Crossclaim fails to do so.  *See Puri v. Khalsa*, 674 Fed. App'x. 679,

16  690 (9th Cir. 2017).

17      First, Arustamyan fails to allege with any particularity what the actual fraudulent

18  conduct was (*i.e.*, "the who, what, when, where, and how" of the claim).  He fails to

19  allege what potential misrepresentations were made, who made them, and how he was

20  allegedly defrauded.  *See Ebeid ex rel. United States*, 616 F.3d at 1000 (stating that

21  general allegations "lacking any details or facts setting out the 'who, what, when,

22  where, and how'" were insufficient under Rule 9(b)).  All that is discernable from the

23  Crossclaim is that Arustamyan believes that he was not fully repaid under the Loan

24  Agreements, which does not come close to identifying the alleged fraudulent conduct

25  necessary for Arustamyan to merit recovery for unjust enrichment.  The Crossclaim

26  contains no allegations from which Claimants can identify "the particular misconduct

27  which is alleged to constitute the fraud charged so that they can defend against the

28

19

charge and not just deny that they have done anything wrong."  *Challenge Printing Co., Inc. v. Elecs. for Imaging Inc.*, 500 F. Supp. 3d 952, 966 (N.D. Cal. 2020) (quoting *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018)).  The Crossclaim therefore fails to satisfy Rule 9(b)'s heightened pleading standard, and Claimants respectfully request that it be dismissed.

### D.   Arustamyan's Crossclaim fails to plead a constructive trust

Again assuming that Arustamyan can bring claims arising from the Loan Agreements under California law, his first cause of action also is improper because a constructive trust is an equitable remedy, not an independent cause of action.  *See Lund v. Albrecht*, 936 F.2d 459, 464 (9th Cir. 1991) (a constructive trust "is a remedial device, not a substantive claim on which to base recovery"); *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro LLP*, 150 Cal. App. 4th 384, 398 (2007) (constructive trust is "an equitable remedy, not a substantive claim for relief"); *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1023 n.3 (2000) (constructive trust is "not an independent cause of action but merely a type of remedy for some categories of underlying wrong").  Arustamyan fails to plead any of the required underlying misconduct to warrant such relief.

California recognizes constructive trusts "to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing."  *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990 (1995).  Its elements are: "(1) the existence of a res (property or some interest in property); (2) the right to that res; and (3) the wrongful acquisition or detention of the res by another party who is not entitled to it."  *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 909 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) (quoting *Communist Party*, 35 Cal. App. 4th at 991).  The third element turns on whether there was a breach of duty, violation of trust, fraud, accident, mistake, or other wrongful act by the defendant.  *See, e.g.*, *Communist Party*, 35 Cal. App. 4th at 991 ("A constructive trust *cannot exist* unless

there is evidence that property has been wrongfully acquired or detained by a person not entitled to its possession.") (emphasis in original).

First, Artyom and Gurgen did not acquire or retain the Property through a breach of Arustamyan's trust, by accident or mistake.  Indeed, there is no allegation to that effect, nor is there any allegation that Arustamyan actually owned title or was rightfully entitled to possession of the Property (thereby defeating the second element of constructive trust).  Arustamyan's theory is that Artyom and Gurgen properly acquired the Property using proceeds from one of the Loan Agreements, but that Artyom and Gurgen later failed to timely repay the loans under the terms of the Loan Agreements. Arustamyan is therefore merely a common unsecured creditor, not the beneficiary of a constructive trust.  Accordingly, Arustamyan's claim for imposition of a constructive trust fails as a matter of law.  *Cf. Internet Direct Response, Inc. v. Buckley*, No. SA CV 09-1335 ABC, 2011 WL 835607, at *8 (C.D. Cal. Mar. 7, 2011) (rejecting plaintiff's assertion of a constructive trust where plaintiff had "the same claim here as any other judgment creditor with a money judgment").

Artyom and Gurgen also owe no fiduciary duty to Arustamyan.  The Crossclaim includes the conclusory allegation that "[a] fiduciary relationship existed between Arustamyan and Claimants, as members of a joint venture," Crossclaim ¶¶ 18, 33, but there are no facts alleged to support that bare assertion.  The only actual agreements identified anywhere in the Crossclaim are the Loan Agreements.  Arustamyan characterizes the Loan Agreements as evidence of a joint venture relationship, but he fails to include any factual allegations to support this conclusion.[8]

---

[8] At most, Arustamyan argues that the Loan Agreements established a "joint venture" because Gurgen allegedly told the Armenian National Security Service on January 29, 2019, that he and Artyom had entered into "joint venture agreements" with Arustamyan.  However, this is not true and the translation of Gurgen's statement, nor would the statement be admissible here.  Gurgen never used the Armenian term for joint venture nor did he suggest such a relationship existed.  Even if Gurgen's statement about the Loan Agreements to the NSS lacked adequate precision, that is hardly proof of a joint venture or reason for this Court to go beyond the four corners of the clear terms of the Loan Agreements themselves here.

CASE NO.: 22-CV-02902-JLS-PD;
MEMORANDUM ISO OF MOTION TO DISMISS CROSSCLAIM

It is unclear what the legal requirements to form a joint venture are in Armenia, but assuming California law applies, Arustamyan would need to have alleged facts establishing "(1) a joint interest in a common business; (2) an understanding to share profits and losses; and (3) a right to joint control" to properly allege a joint venture. *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 853 (C.D. Cal. 2004). The Loan Agreements themselves do not make any reference to joint interest in a common business, nor does the Crossclaim allege that the parties to the Loan Agreements had the intent to engage in any such common business. On the contrary, the Loan Agreements were drafted as personal loans guaranteed generally by Artyom and Gurgen's personal assets. Arustamyan took on no risk of loss if the brothers' property investment were to fail. His only entitlement was to a return of principal with 4% annual charged interest. Crossclaim Exs. A-C (each at Sec. 1.3). Further, there is no allegation that Arustamyan had a right to control the Property or any other properties purchased with the proceeds of the Loan Agreements.

The alleged facts only support that Arustamyan entered into normal loan agreements with Artyom and Gurgen, which helped the brothers to finance their real estate endeavors. Because the only relationship Arustamyan's allegations actually show is that of a creditor-borrower, there is no fiduciary duty to be breached. *See, e.g., Meyer v. One W. Bank, F.S.B.*, 91 F. Supp. 3d 1177, 1183 (C.D. Cal. 2015) ("[C]ourts have regularly held that, under California law, a borrower-lender relationship does not create a fiduciary duty.").

Finally, the Crossclaim fails to adequately allege that Artyom and Gurgen were unjustly enriched or obtained or retained the property through fraud or other wrongdoing. As explained above, Arustamyan's allegations, if true, would merely establish that he is a creditor, not the victim of fraud. This is insufficient to establish a constructive trust. *See Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1281 (C.D. Cal. 2015) (constructive trust claim that did not allege defendant acquired his

share of the proceeds "through his own fraud or wrongdoing" was "not well pleaded"); *Michaelian v. State Comp. Ins. Fund*, 50 Cal. App. 4th 1093, 1114 (1996), *as modified* (Dec. 11, 1996) (sustaining trial court's motion to dismiss constructive trust claim because plaintiff had not alleged facts showing any fraud or breach of fiduciary duty by defendant).

For these reasons, Claimants respectfully request that this Court dismiss Count One of Arustamyan's Crossclaim.

**E.     Arustamyan cannot claim a resulting trust on the basis of funds that were expressly loaned to Claimants**

A resulting trust is a type of implied trust that, in some circumstances, can be formed when a piece of property is legally conveyed to one party, but the consideration for that property is paid by someone else. *Rowland v. Clark*, 91 Cal. App. 2d 880, 882-83, 206 P.2d 59 (1949); Restatement (Third) of Trusts § 7, comments b and c (2003). A resulting trust, however, is "not founded on the simple fact that money or property of one [person] has been used by another to purchase property"—it "must be mutually intended between the parties" that the property is to be held in trust for the person providing the funds. *United States v. Gutierrez*, 734 F. App'x 441, 445 (9th Cir. 2018) (quoting *Lezinsky v. Mason Malt Whisky Distilling Co.*, 196 P. 884, 890 (1921)). If a plaintiff fails to plead facts in support of the parties' mutual intent to form a trust, dismissal of the plaintiff's resulting trust claim is proper. *In re Cedar Funding, Inc.*, 408 B.R. 299, 315 (Bankr. N.D. Cal. 2009) ("A resulting trust does not arise unless both parties to the transaction intended that the holder of the property was to hold it in trust for the other."); *Majewsky v. Empire Constr. Co.*, 2 Cal. 3d 478, 485, 467 P.2d 547, 552 (1970) (existence of resulting trust "based on the manifestation of intention of the person creating it").

Count Three of the Crossclaim fails both as to the baseline supposition of a resulting trust—that Arustamyan paid the consideration for the Property—and as to the

necessary intent of the parties.  The Crossclaim alleges that a resulting trust is created whenever "a party gives money to another to purchase property . . . but where the lender is not on title."  Crossclaim ¶ 48.  This is a misstatement of the law.  While there is a "natural presumption" that a buyer holds property in trust for another who pays the purchase price, *Martin v. Kehl*, 145 Cal. App. 3d 228, 238 (Cal. Ct. App. 1983), California law does not recognize this presumption where the money used to purchase the property was the proceeds of a *loan*.  *See Reid v. Gillespie*, 87 Cal. App. 2d 769, 771, 197 P.2d 566, 567 (1948) (citing Restatement (Second) of Trusts § 445).  Arustamyan *did not pay the consideration for the Property*.  Even if the actual funds were transferred from his bank account, those very funds had already been loaned to Artyom and Gurgen, pursuant to the very Loan Agreements cited repeatedly in the Crossclaim.  It was therefore not Arustamyan's funds used to purchase the property, but funds of Artyom and Gurgen that they had received pursuant to the Loan Agreements.[9]  As stated in the plain language of the actual Loan Agreements, Arustamyan merely maintained the ability to reclaim the principal amount with interest once the loan period expired.

The Loan Agreements also contradict any conclusion that Artyom and Gurgen specifically intended to acquire and hold the Property in trust for Arustamyan's benefit. The Loan Agreements are the only expression of the parties' intent, and there is nothing in the Loan Agreements to support such a conclusion.  Instead, the parties' clearly expressed intention was for Arustamyan to possess a loan receivable that was generally guaranteed by Artyom and Gurgen's personal assets as a common creditor.  *In re Cedar Funding, Inc.*, 408 B.R. 299, 315 (Bankr. N.D. Cal. 2009) (allegation of an intent to establish a mere security interest "is not a sufficient basis to impose a resulting trust"); *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1281-82 (C.D. Cal. 2015)

---

[9] Further, Artyom and Gurgen renovated the Property after purchasing it, as Arustamyan's Crossclaim acknowledges.  Crossclaim ¶ 19.  But what the Crossclaim fails to acknowledge is that the funds used to support the renovations included money that did not originate from Arustamyan or the Loan Agreements.

CASE NO.: 22-CV-02902-JLS-PD;
MEMORANDUM ISO OF MOTION TO DISMISS CROSSCLAIM

(refusing to impose a resulting trust because there were no allegations defendant was asked "to hold or otherwise maintain for Plaintiff's benefit, his claimed share of any distribution").  Because the Crossclaim fails to plead any facts to support that Artyom and Gurgen intended to purchase and hold the Property in trust for Arustamyan, Claimants respectfully request that this Court dismiss Count Three of the Crossclaim, as well.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Claimants respectfully request that this Court dismiss Arustamyan's Crossclaim with prejudice.

Dated: July 18, 2022                    VINSON & ELKINS LLP


                                        By:  <u>/s/ *Ephraim Wernick*</u>
                                             Ephraim Wernick
                                             Christopher W. James
                                             Peter T. Thomas

                                        *Attorneys for Claimants*
                                        *Artyom Khachatryan, Gurgen Khachatryan,*
                                        *and WRH, Inc.*