JAMES CURT BOHLING, Acting Chief
D. HUNTER SMITH, Trial Attorney
Money Laundering and Asset Recovery Section
Criminal Division
United States Department of Justice
    1400 New York Avenue NW
    Washington, DC 20005
    Telephone: (202) 355-5705
    Email: David.H.Smith@usdoj.gov

E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorney
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-1785
    Facsimile: (213) 894-0142
    E-mail: Maxwell.Coll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>REAL PROPERTY IN LOS ANGELES, CALIFORNIA,<br><br>    Defendant. | No. 2:22-cv-02902-JLS-PDx<br><br>PLAINTIFF UNITED STATES OF AMERICA'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER TO STAY THIS CIVIL FORFEITURE PROCEEDING<br><br>Date:      October 28, 2022<br>Time:      10:30 a.m.<br>Courtroom:  8A, the Honorable<br>            Josephine L. Staton |

**TABLE OF CONTENTS**

I.   The Government Has Accurately Stated The Standard For Showing Civil Discovery Will Adversely Affect A Related Criminal Investigation Or Case..................................2

II.  The Government Has Shown An Adverse Impact On The Ongoing Criminal Investigation.........................................3

III. Foreign Criminal Investigations Can Support A Stay Under Section 981(g)(1) And The Court's Inherent Power...............7

IV.  The Court Should Reject The Khachatryan Claimants' Arguments Regarding Entry Of A Protective Order Pursuant To 18 U.S.C. § 981(g)(3)..........................................9

V.   The Khachatryan Claimants' Other Complaints Ring Hollow.......11

VI.  The Government's Proposal of a Stay With 180-Day Status Reports Is Reasonable and Proper..............................12

VII. Conclusion....................................................14

**TABLE OF AUTHORITIES**

**CASES** PAGE(S)

Herman & MacLean v. Huddleston,
    459 U.S. 375 (1983) ......................................... 2

Sanchez v. Monumental Life Ins. Co.,
    102 F.3d 398 (9th Cir. 1996) ................................. 2

United States v. One 2008 Audi R8 Coupe Quattro,
    866 F. Supp. 2d 1180 (C.D. Cal. 2011) ........................ 4

United States v. Hagege,
    437 F.3d 943 (9th Cir. 2006) ................................. 4

United States v. Real Prop. and Premises,
    657 F. Supp. 2d 1060 (D. Minn. 2009) ......................... 5

United States v. $3,592.00 United States Currency,
    2016 WL 5402703 (W.D.N.Y. Sept. 28, 2016) .................... 5

United States v. $68,145.34 Held in Bellco Credit Union Bank Account. #XXXXXXXXX,
    2020 WL 353115 (D. Colo. Jan. 17, 2020) ...................... 6

United States v. Currency $716,502.44,
    2008 WL 5158291 (E.D. Mich. Dec. 5, 2008) .................... 6

United States v. $177,844.68 in U.S. Currency,
    2015 WL 355495 (D. Nev. Jan. 27, 2015) ................ 6, 7, 10

Wallace v. Kato,
    549 U.S. 384 (2007) ......................................... 8

Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines,
    925 F.2d 1193 (9th Cir. 1991) ............................... 8

Leyva v. Certified Grocers of California, Ltd.
    593 F.2d 857 ................................................ 8

Landis v. North American Co.,
    299 U.S. 248 (1936) ......................................... 8

Mediterranean Enterprises v. Ssangyong Corp.,
    708 F.2d 1458 (9th Cir. 1983) ............................... 8

State Bank of Albany v. United States,
    530 F.2d 1379 (Ct. Cl. 1976) ................................ 8

Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson,
    559 U.S. 280 (2010) ......................................... 8

United States v. $1,026,781.61 in Funds From Fla. Cap. Bank,
    2013 WL 4714188 (C.D. Cal. July 29, 2013) .................... 8
United States v. $160,280.00 in U.S. Currency,
    108 F. Supp. 3d 324 (D. Md. 2015) ............................ 8
United States v. Approximately $144,001 in U.S. Currency,
    2010 WL 1838660 (N.D. Cal. May 3, 2010) ...................... 9
United States v. Sum of $70,990,605, et al.,
    4 F. Supp. 3d 209 (D.D.C. 2014) ............................. 10
United States v. $67,900.00 in U.S. Currency,
    2013 WL 6440211 (E.D. Cal. Dec. 9, 2013) .................... 12
United States v. $341,500.00 in U.S. Currency,
    2022 WL 2285659 (C.D. Cal. Mar. 8, 2022) .................... 12
United States v. Wolf of Wall Street" Motion Picture,
    2017 WL 8230168 (C.D. Cal. Sept. 13, 2017) .................. 13
United States v. All Funds on Deposit in Suntrust Account No. XXXXXXXXX8359,
    456 F. Supp. 2d 64 (D.D.C. 2006) ............................ 13
United States v. M/Y Galactica Star, et al.,
    No. 4:17-cv-02166 (S.D. Tex. March 4, 2018) ................. 13

**Statutes**

18 U.S.C. § 981(g) ............................................... 1
18 U.S.C. § 981(g)(1) ....................................... passim
18 U.S.C. § 981(g)(5) ........................................ 3, 10
18 U.S.C. § 983(g) ............................................... 8
18 U.S.C. § 3292 ................................................. 4

**Other**

Fed. R. Civ. P. 12 .............................................. 11
Fed. R. Civ. P. 33(b)(3) ........................................ 12

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff United States of America ("United States" or "the government") respectfully submits this reply memorandum of points and authorities in support of its motion to stay this action pursuant to the mandatory stay provisions of 18 U.S.C. § 981(g) and the Court's inherent power. Gurgen and Artyom Khachatryan, like most subjects or targets of a criminal investigation, want to know what the government knows.[1] They ask the Court to allow them to pursue their already-propounded discovery requests, which seek, among other things, all documents relating to any witnesses the Government has interviewed and all documents the government has received in connection with any subpoena. DE 37-2. But the rules of criminal procedure do not require the government to show its hand at this stage. And for good reason. Such an early window into the government's evidence and investigative strategy would discourage subjects and others from disclosing facts truthfully, permit witness tampering and the destruction of evidence, and encourage subornation of perjury, among other issues. That is why criminal discovery is more limited than civil discovery and why Congress enacted 18 U.S.C. § 981(g)(1), which automatically stays a civil forfeiture proceeding where civil discovery will adversely affect an ongoing criminal investigation or case.

The Khachatryan Claimants' arguments in opposition to a stay of civil discovery each fail. First, they argue that Section 981(g)(1) does not authorize a stay if it is "likely" that civil discovery will adversely affect a related criminal investigation, as opposed to when

---

[1] And, like most criminal defendants, as Gurgen and Artyom are in Armenia, they want broader and earlier discovery into the prosecution's case than is permitted under the governing rules of procedure.

1

civil discovery will "actually have an adverse effect on the related criminal matter." Opp'n Br. at 7-8. Second, the Khachatryan Claimants raise "doubts" about the existence of an ongoing criminal investigation and argue the government cannot show an adverse impact of civil discovery on the ongoing related criminal investigation. Id. at 10-16. Third, the Khachatryan Claimants argue that this Court should ignore any adverse effect on the foreign criminal prosecutions in considering whether to stay this case. As discussed below, these arguments lack merit.

**I.    The Government Has Accurately Stated The Standard For Showing Civil Discovery Will Adversely Affect A Related Criminal Investigation Or Case.**

The Khachatryan Claimants argue that to obtain a stay under 18 U.S.C. § 981(g)(1), the government must show that discovery "will *actually have an adverse effect* on the related criminal matter," and that a showing that such an adverse effect is "likely" does not suffice. Opp'n Br. at 7-8 (emphasis in original). Not so.

First, the "preponderance-of-the-evidence standard [is] generally applicable in civil actions." Herman & MacLean v. Huddleston, 459 U.S. 375, 390 (1983). Under that standard the government must show prejudice is "more likely than not." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996). There is no reason to think that the government must show harm will occur beyond a reasonable doubt, much less as an absolute certainty. That is especially true here, where the statute requires courts to make a determination about a contingent, future event, i.e., whether civil discovery "will" adversely affect a related criminal investigation or case. 18 U.S.C. § 981(g)(1). No court can predict the future with 100 percent accuracy, so this determination necessarily requires the court to assess whether it is

2

likely that proceeding with civil discovery will adversely affect a related criminal investigation or prosecution.

Second, every court in this District to address the issue head-on has held that Section 981(g)(1) stays are issued on the basis of a showing of likely prejudice to the criminal proceeding. See Mot. (DE 37) at 3 (listing cases). As these cases make clear, and as Claimants appear to concede, this rule and practice is the standard approach in California district courts. Opp'n Br. at 7 (conceding the government cites California district courts while relying on out-of-circuit district-court decisions).

Moreover, regardless of whether the Court applies the "likely prejudice" standard, the government has submitted an ex parte declaration pursuant to 18 U.S.C. § 981(g)(5) and thus, as discussed more fully infra, has clearly shown that civil discovery will adversely affect the ongoing criminal investigation. Accordingly, the government has accurately characterized--and met--the standard for an automatic stay under 18 U.S.C. § 981(g)(1).

**II. The Government Has Shown An Adverse Impact On The Ongoing Criminal Investigation.**

The Khachatryan Claimants go to great lengths to paint the government's ongoing criminal investigation as "already complete" and limited to the allegations in the civil forfeiture Complaint. See Opp'n Br. 9-16. But as detailed in the government's ex parte declaration, that is not the case. The government declines to further discuss the extent of the investigation in this public filing because that would "only result in the very prejudice to the criminal proceeding

3

that the Government seeks to avoid." United States v. One 2008 Audi R8 Coupe Quattro, 866 F. Supp. 2d 1180, 1183–84 (C.D. Cal. 2011).[2]

In any event, Claimants' arguments in opposition to the stay are riddled by internal contradiction. On the one hand, Claimants assert that the Government's "investigative theories . . . are detailed in the Complaint," and so are already "known to Claimants," thus "eliminating" the need for a stay. Opp'n Br. at 13, 15. On the other hand, Claimants say a stay is not warranted because "on the face of the Government's Complaint . . . there is no criminal case that the Government could bring." Id. at 20; see id. at 16-20 (faulting complaint for, among other things, not "alleg[ing] the existence of [additional] evidence" and not "identif[ying] any [chargeable] criminal conduct"). The Court should not credit this heads-we-win, tails-the-government-loses logic: the presence of allegations in the complaint and the absence of others cannot both be a reason to deny a stay. After all, the Complaint does not allege all the government's potential criminal theories or evidence.[3]

---

[2] Claimants' "concerns" that the FBI may have "violat[ed]" their constitutional rights in the course of the investigation are unfounded. Opp'n Br. at 4 n.3. As Claimants state, they have raised their concerns with the government and the government will respond to them. Claimants also state that they may "raise this issue separately with the Court later." Id. at 5 n.3. If they do, the government will address the issue before the Court at that time.

[3] The ex parte declaration describes conduct within the criminal statute of limitations. It is certainly not the case that every conceivable prosecution would be time-barred. Claimants' concerns about "mischief" and "pretextual" requests to toll statutes of limitations under 18 U.S.C. § 3292 are misplaced. Opp'n Br. at 20 n.13. Those concerns can be properly raised, when they are ripe, on a motion to dismiss. United States v. Hagege, 437 F.3d 943, 953 (9th Cir. 2006).

4

Tellingly, the Khachatryan Claimants do not even attempt to distinguish the cases cited in the government's opening brief that support a stay. And they do not cite a single case where a court denied a stay where the government submitted an ex parte application detailing the ongoing criminal investigation. That is because in addition to the facts outlined in the government's declaration, the law wholly supports a stay here. Moreover, the cases the Khachatryan Claimants do cite are inapposite.

In the Khachatryan Claimants' cited case of United States v. Real Prop. and Premises, 657 F. Supp. 2d 1060 (D. Minn. 2009), the court denied a stay because "the Government ha[d] not submitted ex parte an affidavit or other document explaining how or why civil discovery might impair the criminal case," id. at 1064, and, further, discovery requests had not yet been served by the parties, id. The opposite is true here. Even the court in Real Property and Premises acknowledged that courts grant stays where the government submits affidavits or other documents "demonstrating that civil discovery might threaten to reveal confidential informants or would otherwise impair the criminal investigation." Id.

Claimants also cite United States v. $3,592.00 United States Currency, No. 15-CV-6511-FPG, 2016 WL 5402703, at *1 (W.D.N.Y. Sept. 28, 2016). In that case, the court denied a motion to stay without prejudice where discovery had not yet begun, holding that once discovery commenced, the government could file a renewed motion to stay discovery.[4] Id. at *2. Here, discovery has commenced, and claimants already seek documents related to the ongoing criminal investigation.

---

[4] Unlike the present case, in the Western District of New York, the government did not file an ex parte declaration detailing the
*(footnote cont'd on next page)*

5

Likewise, in another case the Khachatryan Claimants cite, <u>United States v. $68,145.34 Held in Bellco Credit Union Bank Acct. #XXXXXXXXX</u>, the court granted a stay and held that the fact that claimants had already served discovery requests seeking, among other requests, all criminal discovery was sufficient to meet the Government's "low burden" for a stay. No. 18-CV-03208-WJM-KLM, 2020 WL 353115, at *5 (D. Colo. Jan. 17, 2020). There, the court explained that proceeding with civil discovery "will burden law enforcement by compromising prospective witnesses and other evidence now being gathered by the Government in preparation for the criminal proceedings in connection with the underlying facts of this case." <u>Id</u>. (Another case that the Khachatryan Claimants cite also denied a stay for the very same reasons. <u>See</u> <u>United States v. Currency $716,502.44</u>, No. 08-CV-11475, 2008 WL 5158291 (E.D. Mich. Dec. 5, 2008)). Here too, the discovery requests already propounded on the government are directly related to the United States' criminal investigation and the Armenian criminal prosecutions, and would burden the government in similar ways.

Lastly, in <u>United States v. $177,844.68 in U.S. Currency</u>, Nos. 2:13-cv-00100-JCM-GWF, 2:13-cv-00947-JCM-GWF, 2015 WL 355495 (D. Nev. Jan. 27, 2015), which the Khachatryan Claimants cite, the court <u>granted</u> the government's motion to stay the case and lifted the stay one year later, when the government filed a motion to lift the stay. <u>Id</u>. at *1. After claimants served civil discovery, the government filed a renewed motion to stay, which the court again <u>granted</u>. <u>Id</u>. On January 27, 2015--two years after granting the initial stay--the court denied

---

ongoing criminal investigation; rather, the government publicly filed a short declaration arguing that the criminal and civil cases were related. <u>See</u> <u>$3,592.00 United States Currency</u>, No. 15-CV-6511-FPG, DE 7 at 4-5.

the government's request to extend the stay. Id. at *7. Even then, it did so only because civil discovery would not have required "the Government to disclose . . . confidential information that has been or is being developed during ongoing criminal investigations." Id. at *7. Instead, the proposed discovery narrowly focused on issues concerning "the chemical structure of [the drugs] UR-144 or XLR-11," and a protective order could reasonably cabin discovery to those issues. Id.

Because the law weighs entirely against them, the Khachatryan Claimants cling to characterizations of an email they obtained from a subpoena recipient. But, first, the government's ex parte declaration shows that the inferences that the Khachatryan Claimants' would draw from that email are incorrect. Second, Claimants' email only highlights the risk the government faces from the already-propounded civil discovery. The Khachatryan Claimants are actively speaking with witnesses known to them, and will surely seek to interview the other witnesses they identify through civil discovery. See, e.g., DE 37-2 (seeking "[a]ll documents relating to any witnesses the Government has interviewed" and "[a]ll documents the Government has . . . received from, any other party or third party in connection with a subpoena[.]"). Congress enacted 18 U.S.C. § 981(g)(1) precisely to protect the government's related criminal investigation or criminal case from such interference.

**III. Foreign Criminal Investigations Can Support A Stay Under Section 981(g)(1) And The Court's Inherent Power.**

The Khachatryan Claimants argue that the Armenian criminal prosecutions cannot be a basis for a stay under 18 U.S.C. § 981(g), Opp'n Br. at 16-17, and that, accordingly, this Court should ignore

7

the adverse impact that civil discovery would have on the Armenian criminal prosecutions. Given that the government has established an adverse impact on its own (i.e., United States) criminal investigation, the Court likely does not need to reach the issue of the foreign prosecutions. Further, even if the Court were to agree with the Khachatryan Claimants' reading of the stay statute, the Court could still stay the case based on the Armenian criminal prosecutions under its inherent power. See Mot. at 11 (citing Wallace v. Kato, 549 U.S. 384, 393-94 (2007); Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines, 925 F.2d 1193, 1195 (9th Cir. 1991); Leyva v. Certified Grocers of California, Ltd. 593 F.2d 857, 863-64 (9th Cir. 1979); Landis v. North American Co., 299 U.S. 248, 254 (1936)); see also Mediterranean Enterprises v. Ssangyong Corp., 708 F.2d 1458, 1465 (9th Cir. 1983). The Khachatryan Claimants do not even address this argument about the Court's inherent power.

But the Khachatryan Claimants' reading of the statute is wrong, in any event. The Khachatryan Claimants argue that 18 U.S.C. § 983(g) permits a stay only when "the Government"—meaning the federal government[5]—is conducting an investigation or a prosecution. But several cases hold that stays under 18 U.S.C. § 981(g)(1) are appropriate based on state prosecutions. See, e.g., United States v. $1,026,781.61 in Funds From Fla. Cap. Bank, No. CV 09-04381-JVS ANX, 2013 WL 4714188, at *1 n.1 (C.D. Cal. July 29, 2013); United States v. $160,280.00 in U.S. Currency, 108 F. Supp. 3d 324, 325 (D. Md. 2015).

---

[5] As all appear to agree, the statute's use of the term "the Government" refers to the federal government. See also Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 559 U.S. 280, 297 (2010); accord id. at 311 n.8 (dissenting opinion); State Bank of Albany v. United States, 530 F.2d 1379, 1382 (Ct. Cl. 1976).

If the statute required—as the Khachatryan Claimants argue—the federal government to conduct both "prosecutions" and "investigations" for there to be a basis for a stay, those cases would be wrong. Those cases are not wrong: under the statute, a stay is appropriate if discovery will adversely affect "[1] the ability of the Government to conduct a related criminal investigation or [2] the prosecution of a related criminal case." 18 U.S.C. § 981(g)(1). There is no requirement that the prosecution be a federal prosecution. See United States v. Approximately $144,001 in U.S. Currency, No. C 09-04182 JSW, 2010 WL 1838660, at *2 (N.D. Cal. May 3, 2010).

Finally, Claimants' concerns about stays based on "tangentially related" foreign prosecutions have no applicability here. Opp'n Br. at 17. Here, both the foreign criminal prosecutions and the U.S. civil forfeiture case allege that the very same individuals violated the very same provisions of the Armenian Criminal Code through the very same transactions.

**IV. The Court Should Reject The Khachatryan Claimants' Arguments Regarding Entry Of A Protective Order Pursuant To 18 U.S.C. § 981(g)(3).**

The Khachatryan Claimants raise the possibility of a protective order, in lieu of a stay, that would allow certain aspects of this case to proceed. See Opp'n Br. at 8, 10. Yet they do not explain what an appropriate protective order would look like or how it could advance this litigation without providing an unwarranted look into the ongoing criminal investigation.[6] Regardless, there is no protective order that would allow the Khachatryan Claimants to proceed with civil discovery

---

[6] Nor did they raise the issue of a protective order in the parties' the telephonic conference that preceded the filing of the motion to stay.

9

without adversely affecting the government's ongoing criminal investigation. The Khachatryan Claimants are criminal defendants in Armenia. And they have already served wide-ranging discovery requests, calling for the government to identity all witnesses and produce related reports. Limiting discovery to the public allegations in the Complaint would not protect the government's interest in ensuring that the government's investigation remains confidential (including the evidence underlying those allegations) or protect the ongoing criminal prosecutions against the claimants in Armenia.

For this reason, the Khachatryan Claimants' cases on protective orders are distinguishable. As described above, even without a protective order, civil discovery in United States v. $177,844.68 in U.S. Currency would not have required "the Government to disclose . . . confidential information that has been or is being developed during ongoing criminal investigations," $177,844.68, 2015 WL 355495, at *7, and a protective order could reasonably cabin discovery to issues relating to the structure of chemical substances. Claimants do not propose any such discrete limitations here, because none are possible.

Similarly, in United States v. Sum of $70,990,605, et al., 4 F. Supp. 3d 209 (D.D.C. 2014), the government had seized over 70 million dollars from two bank accounts situated in Afghanistan as proceeds of a wire fraud conspiracy. Id. at 210-11. Claimants asserted defenses to forfeiture based upon "international comity and the act of state doctrine" (id. at 211), which are legal issues that involve the relationship between the United States and Afghanistan. The court noted that discovery could be limited to those issues (id. at 214), which had nothing to do with the sensitive information the government needed to protect, such as confidential witnesses and the details of

10

the investigation.  Accordingly, there was a rationale to the limitation.[7]

By contrast, the instant case directly implicates confidential information in the government's possession; a protective order would not protect the government's sensitive information.  This is not a case of only slight and incidental overlap between a criminal investigation and the forfeiture proceeding, where a protective order might make sense; instead, charged criminal defendants are the claimants in the civil forfeiture proceeding.

**V.   The Khachatryan Claimants' Other Complaints Ring Hollow.**

This Court should disregard Claimants' complaints about "clogged dockets" or the financial and reputational harm that this case has allegedly caused them.  See e.g., DE at 2.  First, if Claimants had wished to clear their names—or ensure that cases proceed quickly—they should not have fled the Armenian prosecutions.  Second, the government has so far not tied up Claimants' property for one day: Claimants are still able to use and access the property.  Moreover, Claimants were marketing the property for sale when the Government filed the complaint and the government immediately proposed, and then agreed to, an interlocutory sale order which would permit any sale to proceed.  See DE 36.  The property has still not sold.  Further, the government has taken steps to advance this forfeiture case: though § 981(g) permits the government to seek a stay of a forfeiture "proceeding," the government has only sought a stay of discovery; it has not objected to

---

[7] And in Sum of $70,990,605 et al., unlike the present case, the government chose not to file an ex parte affidavit detailing the investigation pursuant to 18 U.S.C. § 981(g)(5).

11

briefing, argument and, ultimately, a decision on Claimants' Rule 12(c) dispositive motion.

The Khachatryan Claimants suggest that the government's Special Interrogatories amount to unfair "one-sided merits discovery," and argue that they should be entitled to take depositions of pertinent witnesses and request documents. Opp'n Br. at 14–15, n.9. But as the government noted in the parties' Joint 26(f) Report, the government did not object to staying both the responses to the Special Interrogatories and the Khachatryan Claimants' motion for judgment on the pleadings. DE 30 at 12. The Khachatryan Claimants chose to pursue their motion for judgment on the pleadings and responded (inadequately) to the government's Special Interrogatories.[8]  It is odd for the Claimants now to suggest that these interrogatories are unfair when the government offered to stay them months ago. If Claimants agree to withdraw or stay their motion for judgment on the pleadings, that offer remains on the table.

**VI.      The Government's Proposal of a Stay With 180-Day Status Reports Is Reasonable and Proper.**

The Khachatryan Claimants ask the Court, in the alternative, to require the government to submit a status report to the Court within 60 days. Opp'n Br. at 21–22. Claimants cannot cite any case where a 60-day requirement was imposed; that is because the request is unreasonable and overly burdensome on the government and the Court.

---

[8] Indeed, Claimants did not even sign their interrogatory responses. See Fed. R. Civ. P. 33(b)(3) ("[e]ach interrogatory must . . . be answered separately and fully in writing under oath"); United States v. Approximately $67,900.00 in U.S. Currency, No. 2:13-CV-01173 JAM, 2013 WL 6440211, at *2 (E.D. Cal. Dec. 9, 2013) (striking claim, in part, because responses to special interrogatories were not signed under oath).

12

The government's request to file a status report every 180 days is appropriate. The criminal investigation is complex and requires foreign evidence that can be time-consuming to acquire. Thus, status reports at 180-day intervals make far more sense than the 60-day intervals proposed by the Khachatryan Claimants. It is true that in United States v. $341,500.00 in U.S. Currency, No. 2:21-CV-06967-RGK-MAR, 2022 WL 2285659, at *3 (C.D. Cal. Mar. 8, 2022), the honorable R. Gary Klausner granted the government's request for the filing of status reports every 90 days. Opp'n Br. at 21–22. But that case involves domestic investigations with no foreign evidence, not the complex cross-border investigation at issue here.

In contrast, 180 days is the relief that this District granted in the civil forfeiture cases over assets traceable to the 1MBD misappropriation scheme. See, e.g., United States v. "The Wolf of Wall Street" Motion Picture, No. CV16-5362, 2017 WL 8230168, *1 (C.D. Cal. Sept. 13, 2017); see also United States v. All Funds on Deposit in Suntrust Account No. XXXXXXXX8359, 456 F. Supp. 2d 64, 66 (D.D.C. 2006) ("it is FURTHER ORDERED that this civil forfeiture case is STAYED for a period of six months from the date of this Order. On or before April 12, 2007, the Government shall file a status report."); United States v. M/Y Galactica Star et al., No. 4:17-cv-02166, DE 123 at ¶ 3 (S.D. Tex. March 4, 2018) (staying civil forfeiture case and requiring Government to provide status reports every 180 days, in complex international corruption case).

//
//
//
//

13

**VII. Conclusion**

For the foregoing reasons, the government respectfully requests that this case be stayed, with the government to file an *ex parte* status report in 180 days (and, as necessary, every 180 days thereafter) as to the status of the related criminal proceedings.

Dated: October 14, 2022             Respectfully submitted,

JAMES CURT BOHLING, Acting Chief
Money Laundering and Asset
Recovery Section, Criminal
Division
United States Department of
Justice

  */s/ D. Hunter Smith*
D. HUNTER SMITH, Trial Attorney

E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section

  */s/ Maxwell Coll*
MAXWELL COLL
Assistant United States Attorney
Attorneys for Plaintiff
UNITED STATES OF AMERICA