1  CHRISTOPHER W. JAMES (SBN 289047)
   cjames@velaw.com
2  Vinson & Elkins LLP
   350 South Grand, Suite 2100
3  Los Angeles, CA 90071
   555 Mission Street, Suite 2000
4  San Francisco, California 94105
   Telephone: 415.979.6949
5  Facsimile: 415.651.8786

6  EPHRAIM WERNICK (admitted *pro hac vice*)
   ewernick@velaw.com
7  PETER T. THOMAS (admitted *pro hac vice*)
   petethomas@velaw.com
8  Vinson & Elkins LLP
   2200 Pennsylvania Ave. NW, Suite 500 West
9  Washington, DC 20037
   Telephone: 202.639.6500
10 Facsimile: 202.639.6604

11 *Attorneys for Claimants*
   *Artyom Khachatryan, Gurgen Khachatryan, and WRH, Inc.*
12

13            **UNITED STATES DISTRICT COURT**

14            **CENTRAL DISTRICT OF CALIFORNIA**

15 | UNITED STATES OF AMERICA, | Case No.: 2:22-cv-02902-JLS-PD |
16 | Plaintiff, | **VERIFIED CLAIMANTS** |
   | | **ARTYOM KHACHATRYAN,** |
17 | v. | **GURGEN KHACHATRYAN, AND** |
   | | **WRH, INC.'S NOTICE OF** |
18 | REAL PROPERTY IN LOS ANGELES, CALIFORNIA, | **MOTION AND MOTION TO LIFT** |
   | | **OR MODIFY STAY OF THE CASE** |
19 | Defendant, | |
20 | and | Date:      June 23, 2023 |
   | | Time:      10:30 a.m. |
21 | ARTYOM KHACHATRYAN, | Location:  Courtroom 8A |
   | GURGEN KHACHATRYAN, and | Judge:     Hon. Josephine L. Staton |
22 | WRH, INC., | |
23 | Claimants. | Trial Date:  None Set |
   | | Date Action Filed:  May 2, 2022 |
24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE THAT** on June 23, 2023, at 10:30 a.m., or as soon as the matter may be heard by the Court, located at First Street U.S. Courthouse, 350 West 1st Street, Los Angeles, CA, in Courtroom 8A, 8th Floor before the Honorable Josephine L. Staton, Claimants Artyom Khachatryan, Gurgen Khachatryan, and WRH, Inc. (together, "Claimants") will and hereby do move the Court, pursuant to 18 U.S.C. § 981(g)(1) and the Due Process Clause of the United States Constitution, for an order lifting or modifying the stay of the proceedings.  This motion is made following a conference of counsel pursuant to Local Rule 7–3 which took place on April 7, 2023 (*see* Wernick Decl. ¶ 5) and is made on the grounds that it is proper to lift the stay and allow Claimants to refile their previously-filed dispositive motions for judgment by the Court because (i) the Government has been investigating this matter for approximately four years, which is more than ample time to complete its investigation; (ii) the Government's Complaint includes objectively false allegations and the stay has denied Claimants the opportunity to defend themselves in court; (iii) the stay has caused significant prejudice to Claimants, including substantial financial costs and reputational damage to Claimants and their legitimate businesses; and (iv) Claimants' ability to mount a defense is greatly prejudiced the longer the stay is in place as further delays will adversely impact Claimants' ability to obtain relevant documents and testimony.  If the Court determines that lifting the stay is not appropriate at this time, Claimants respectfully request that the Court modify its Order to allow refiling and consideration of Claimants' previously filed Motion for Judgment on the Pleadings (ECF No. 26), and further require: more frequent updates from the Government; that the Government advise the Court of all exculpatory information in the Government's possession as part of its *ex parte* submissions; that the Government publicly correct the objectively false and misleading allegations that are currently in the Government's Complaint, which are causing unfair reputational and financial harm to the Claimants;

and an end date to the stay, subject to extension only upon good cause shown, to incentivize the Government to move forward with its investigation with due haste and to minimize the ongoing prejudice to Claimants.

Claimants base this motion on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Declaration of Ephraim Wernick, all pleadings and papers filed in this action, oral argument of counsel, and any other matters that may come before the Court.

Dated: May 3, 2023                    VINSON & ELKINS LLP


                                      By:  /s/ *Ephraim Wernick*
                                           Ephraim Wernick
                                           Christopher W. James
                                           Peter T. Thomas

                                      *Attorneys for Claimants Artyom Khachatryan,*
                                      *Gurgen Khachatryan, and WRH, Inc.*

CHRISTOPHER W. JAMES (SBN 289047)
cjames@velaw.com
Vinson & Elkins LLP
350 South Grand, Suite 2100
Los Angeles, CA 90071
555 Mission Street, Suite 2000
San Francisco, California 94105
Telephone: 415.979.6949
Facsimile: 415.651.8786

EPHRAIM WERNICK (admitted *pro hac vice*)
ewernick@velaw.com
PETER T. THOMAS (admitted *pro hac vice*)
petethomas@velaw.com
Vinson & Elkins LLP
2200 Pennsylvania Ave. NW, Suite 500 West
Washington, DC 20037
Telephone: 202.639.6500
Facsimile: 202.639.6604

*Attorneys for Claimants*
*Artyom Khachatryan, Gurgen Khachatryan, and WRH, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff.<br><br>v.<br><br>REAL PROPERTY IN LOS ANGELES, CALIFORNIA,<br><br>Defendant,<br><br>and<br><br>ARTYOM KHACHATRYAN, GURGEN KHACHATRYAN, and WRH, INC.,<br><br>Claimants. | Case No.: 2:22-cv-02902-JLS-PD<br><br>**VERIFIED CLAIMANTS ARTYOM KHACHATRYAN, GURGEN KHACHATRYAN, AND WRH, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO LIFT OR MODIFY STAY OF THE CASE**<br><br>Date:    June 23, 2023<br>Time:    10:30 a.m.<br>Location:  Courtroom 8A<br>Judge:   Hon. Josephine L. Staton<br><br>Trial Date:  None Set<br>Date Action Filed:  May 2, 2022 |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     LEGAL STANDARD ......................................................................... 3

III.    THE INVESTIGATION PERIOD HAS BEEN EXCESSIVE ........................... 4

IV.     CLAIMANTS WILL CONTINUE TO SUFFER PREJUDICE IF
        THE STAY IS NOT LIFTED ................................................................. 7

V.      IF THE STAY IS TO REMAIN IN PLACE, IT SHOULD BE
        MODIFIED ...................................................................................... 11

VI.     CONCLUSION ................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*In re Any & All Funds Held in Republic Bank of Arizona Accts.*
*XXXXXXX, XXXXXXXX, XXXXXXXX, XXXXXXXX, & XXXXXXXX,*
774 F. App'x 400 (9th Cir. 2019) ...............................................................4

*In re Mid-Atl. Toyota Antitrust Litig.,*
92 F.R.D. 358 (D. Md. 1981) ....................................................................10

*Landis v. North Am. Co.,*
299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936) .....................................3

*Mendoza v. City of Los Angeles,*
No. CV 21-4614-KS, 2022 WL 17401793 (C.D. Cal. June 23, 2022) ..............9, 10

*United States v. $1,026,781.61 in Funds From Fla. Cap. Bank,*
No. CV 09-04381-JVS ANX,
2013 WL 4714188 (C.D. Cal. July 29, 2013) ............................................4

*United States v. $177,844.68 in U.S. Currency,*
No. 2:13-CV-100-JCM-GWF,
2014 WL 4071054 (D. Nev. Aug. 15, 2014).....................................4, 11, 12

*United States v. $307,970.00, in U.S. Currency,*
156 F. Supp. 3d 708 (E.D.N.C. 2016) ......................................................10

*United States v. $600,980.00 in U.S. Currency,*
No. 221CV06965RGKMAR,
2022 WL 18397522 (C.D. Cal. Nov. 15, 2022) .....................................4, 11

*United States v. All Funds Deposited In Acct. No. 20008524845, First*
*Union Nat'l Bank,* 162 F. Supp. 2d 1325 (D. Wyo. 2001) .......................4

*United States v. Associated Convalescent Enters., Inc.,*
766 F.2d 1342, 1346 (9th Cir. 1985) .........................................................8

*United States v. Banco Cafetero Panama,*
797 F.2d 1154 (2d Cir. 1986) ..................................................................10

*United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850)*
*in U.S. Currency,*
461 U.S. 555, 103 S. Ct. 2005, 2012, 76 L. Ed. 2d 143 (1983) ...............10

*United States v. One Hewlett Packard Pavilion Laptop,*
No. C 09-02664 WHA, 2009 WL 3061998 (N.D. Cal. Sept. 21, 2009) .................3

**Statutes**

18 U.S.C. § 981(g) .........................................................................3, 4, 9, 11

Claimants Artyom Khachatryan, Gurgen Khachatryan, and WRH, Inc. ("Claimants") hereby file this Motion to Lift or Modify the Stay of the Case (ECF No. 52, the "Stay Order") that this Court granted following the United States of America's ("Government") Motion to Stay Case Pending the Resolution of a Related Federal Criminal Investigation (ECF No. 37). As set forth below, Claimants have suffered undue prejudice as a result of the stay and respectfully request that it be lifted. In the alternative, Claimants request that the Court allow them to refile their Motion for Judgment on the Pleadings (ECF No. 26, the "MJOP") for immediate consideration, and modify its Stay Order to include conditions that will mitigate the ongoing prejudice to Claimants, as set forth below.

## I.   INTRODUCTION

On October 18, 2022, this Court granted the Government's motion to stay the case due to the existence of a related criminal investigation. As a result, this Court dismissed, without prejudice, all pending motions (including the MJOP), subject to refiling upon the lifting of the stay. ECF No. 55. The Court also directed the Government to submit *ex parte* status reports every 180 days on its progress in pursuing the criminal investigation. Stay Order at 7. Though no specific end date was set, this Court stated that it would "reassess the need for terminating the stay" based on the progress of the criminal prosecution, and expressed a willingness to consider a "compelling statement of any prejudice" that Claimants might suffer as a result of the ongoing stay. *Id.* at 6. Both of these considerations now warrant a lift or modification of the stay.

Although this Court's stay has only been in place for six months, the Government's criminal investigation has gone on for approximately four years. The relevant facts date back to 2009 and have not changed. Claimants are not privy to the Government's *ex parte* report to seek an extension of the stay, but it appears that the Government has made little to no progress to advance its circumstantial case since

opening its investigation in 2019.  In contrast, Claimants have uncovered significant *exculpatory* evidence—much of which Claimants recently shared with the Government.  Claimants' exculpatory evidence, much of which the Government should have discovered on its own by now, fatally undermines the Government's bribery theory and directly contradicts many of the unsupported allegations in the Complaint.  The Government has had ample time to test its theory of the case, especially given the significant prejudice that the charged allegations in the Complaint have caused to Claimants and their businesses.  Claimants therefore request this Court lift the stay.  To the extent the Government's recent *ex parte* submission persuasively suggests more time is needed, Claimants respectfully submit that this Court should impose checks on the Government to hasten its investigation and minimize the ongoing, unfair and very real prejudice to Claimants.

Such prejudice to Claimants has crystalized since the imposition of the stay in multiple, significant forms.  Claimants own over a dozen companies and manage over 3,000 employees in Armenia and elsewhere, and they have suffered immense financial and reputational harm due to the unfounded allegations in the forfeiture Complaint, which to this day continues to rely upon numerous verified statements that the Government now knows to be *objectively false*.  Among other things, the Government's allegations have caused multiple banks to terminate their relationships with Claimants and their companies, while also placing undue stress on numerous other business relationships.  This has caused significant financial harm to Claimants and jeopardized their legitimate business operations as well as the livelihoods of over 3,000 employees.  The Government's dilatory investigation also has unfairly devalued the defendant Property itself, much to Claimants' detriment as the lawful owners of the Property.  Specifically, the specter of the Government's forfeiture action has dramatically diminished interest in the home and resulted only in low-ball offers, which has been exacerbated by lackluster and insufficient marketing efforts by the

Government's realtor.  Since taking over marketing of the Property, the Government has obtained no offers close to the agreed-upon appraisal value of the Property.  In contrast, when Claimants controlled the marketing of the Property, they engaged a qualified realtor with relevant experience in the high-end luxury market who was able to secure multiple competitive offers, including one Government-approved contract with a qualified buyer (which unfortunately fell through).  Claimants also continue to accrue substantial costs as the pendency of the action continues without any activity, including over one million dollars in property taxes, maintenance costs and professional and legal fees since the Government initiated this suit.  These costs continue with each passing day.

Both the standards governing stays under 18 U.S.C. § 981(g) and foundational due process protections merit that the stay be lifted and Claimants given an opportunity to finally defend themselves, their names, and their right to the defendant Property in court.[1]

## II.    LEGAL STANDARD

The Government may stay civil forfeiture proceedings if civil discovery actually harms an ongoing related criminal investigation, *see* 18 U.S.C. § 981(g), however the stay cannot be indefinite.  *United States v. One Hewlett Packard Pavilion Laptop*, 2009 WL 3061998, at *1 (N.D. Cal. Sept. 21, 2009) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 257 (1936)).  Due process constitutional protections further warrant a limiting principle; after all, the Government cannot be allowed to make highly charged, public allegations of a crime while conducting an endless fishing expedition in perpetuity, without Claimants being afforded the opportunity to challenge the

---

[1] Should the Court lift its stay, Claimants will immediately refile their MJOP and respectfully request dismissal of the Government's case.  As laid out in that motion, the incredibly thin factual allegations in the Government's 15-page Complaint—even if taken as true (save for those that have been disproven as objectively false based on judicially noticeable evidence)—are insufficient as a matter of law.

Case No.: 22-cv-02902-JLS-PD;
MEMORANDUM ISO MOTION TO LIFT STAY

Government's allegations in court.   The Court must vigilantly safeguard the constitutional rights of Claimants, whose "due process concerns become increasingly heightened the longer his property is held without an opportunity to contest the seizure." *United States v. $600,980.00 in U.S. Currency*, 2022 WL 18397522, at *2 (C.D. Cal. Nov. 15, 2022); *United States v. $177,844.68 in U.S. Currency*, 2014 WL 4071054, at *9 (D. Nev. Aug. 15, 2014) (staying proceedings, but requiring "either that criminal charges have been filed . . . or that the filing of such charges is imminent" to receive further extension).

Moreover, "the Government *must actually carry* [its statutory] *burden*" in demonstrating that a continuation of the stay is warranted.   *$600,980.00 in U.S. Currency*, 2022 WL 18397522 at *2; *see also United States v. All Funds Deposited In Acct. No. 20008524845, First Union Nat'l Bank*, 162 F. Supp. 2d 1325, 1332–33 (D. Wyo. 2001) ("If there are to be any subsequent motions for a stay, the Government will have to meet the burdens placed on it by 18 U.S.C.A. § 981(g).").   This includes demonstration that there remains an adverse effect on the criminal matter.   *In re Any & All Funds Held in Republic Bank of Arizona Accts. XXXXXXXX, XXXXXXXX, XXXXXXXX, XXXXXXXX, & XXXXXXXX*, 774 F. App'x 400, 401 (9th Cir. 2019); *United States v. $1,026,781.61 in Funds From Fla. Cap. Bank*, 2013 WL 4714188, at *1 (C.D. Cal. July 29, 2013).   A criminal investigation that rests on a circumstantial case premised on false allegations and a limited number of known transactions, entities and individuals, cannot be adversely affected by civil discovery.   The Government's shortcoming is punctuated by its apparent lack of progress after four years of investigation, and the substantial exculpatory evidence that exists in this case.

## III.   THE INVESTIGATION PERIOD HAS BEEN EXCESSIVE

In its Stay Order, the Court noted that the delay "does not have to be unduly long because the Court can reassess the need for terminating the stay if the criminal prosecution extends for an excessive period."   Stay Order at 6.   The Government

initiated its investigation in 2019, apparently prompted by a referral from the Armenian authorities shortly after a change in government in Armenia in 2018. By November 2019, the Government had convened a grand jury, issued at least one subpoena, and interviewed multiple witnesses in connection with the presumed referral from the new Armenian government. *See* Wernick Decl. ¶ 7. Presumably, the Government contends in its April 19, 2023 *ex parte* filing that its criminal investigation is progressing, but requires more time. Claimants would take issue with this narrative.

*First*, Claimants respectfully submit that well over 1,200 days of investigation already constitutes an "excessive period" under the unique circumstances of this case. The nature of the facts, witnesses, and supporting documents have not changed in that time; indeed, the investigation concerns alleged acts that took place up to 14 years ago. Indeed, given the exculpatory documents and witnesses in this case, it is not surprising that the Government would need more time to find evidence to support theories that lack a factual basis. At some point, the Government will realize that it cannot prove its case in court, but the reputational and financial harm to Claimants unfairly continues with each day that passes until the Government finally reaches this conclusion.

*Second*, Claimants have reason to believe that the Government's investigation has proceeded at a crawl's pace. For example, on March 17, 2023—*150 days* after the Stay Order, and, by no coincidence, a mere 30 days before the submission of its status report—the Government finally subpoenaed a witness who was known and originally contacted by the Government *in 2019*. Wernick Decl. ¶ 13. In May 2022, the FBI again interviewed the witness and explained then that the Government could issue a subpoena at any time. *Id.* Yet, no subpoena was issued for another 10 months—and only on the eve of this Court's reporting deadline, presumably because the Government needed to show some progress to this Court to justify an extension of the stay. This example of excessive delay casts doubt on any *ex parte* suggestion that the Government is moving swiftly to progress its investigation.

Case No.: 22-cv-02902-JLS-PD;
MEMORANDUM ISO MOTION TO LIFT STAY

*Third*, and in stark contrast to the Government's dilatory pace, Claimants have comprehensively investigated this matter to uncover substantial exculpatory evidence and testimony.  Among other things, Claimants have:

- Obtained documentary proof supporting the legitimacy of the loans at issue and evidence of their full repayment, with interest, which directly rebuts the Government's bribery theory and money laundering case (Wernick Decl. ¶¶ 8–9);

- Interviewed and obtained exculpatory evidence and testimony from dozens of witnesses, many of whom have long been known to the Government and Armenian authorities (*id.*);

- Secured over a dozen sworn statements from defense witnesses who could testify and directly rebut the Government's allegations (*id.*); and

- Learned from several witnesses that the Government and Armenian authorities have received substantial exculpatory statements and evidence that undermine the Government's case and contradict specific allegations in the Complaint (*id.*).

Claimants contend, on good faith and belief, that the Government's need for additional time is not because of logistical complexity—after all, unlike many international cases, the Government here should be able to collect foreign evidence and access foreign witnesses from a fully willing and cooperative Armenian government. The problem the Government has is that the incriminating evidence it seeks simply *does not exist.*  Claimants are cooperating with the investigation, and have voluntarily and proactively provided the Government with early discovery and exculpatory evidence to try and hasten the Government's understanding of the facts and dismissal of this case.  *Id.* ¶¶ 11–12.  But while Claimants continue to impress upon the Government many of the apparent and obvious holes in its case, they continue to suffer substantial prejudice on a daily basis that can only be remedied by this Court's lifting

Case No.: 22-cv-02902-JLS-PD;
MEMORANDUM ISO MOTION TO LIFT STAY

or significantly modifying the existing Stay Order.[2]  Put simply, this Court should not allow the Government to chase unfounded theories in perpetuity, especially when they fly in the face of clear and credible exculpatory evidence that is in the Government's possession.

## IV.   CLAIMANTS WILL CONTINUE TO SUFFER PREJUDICE IF THE STAY IS NOT LIFTED

The six months since the Stay Order have crystalized the substantial prejudice inflicted on Claimants from prolonging this forfeiture action.

*First*, the Government's unfounded allegations of corruption have caused substantial financial and reputational harm on Claimants, jeopardizing their legitimate present and prospective business opportunities.   Though unmentioned in the Complaint, Claimants are successful entrepreneurs who own a thriving business conglomerate including over 15 companies in Armenia.  Given the charged nature of the allegations, however, Claimants and their businesses have suffered from understandable, but unfair, skepticism from banks and business partners involved in wholly unrelated and legitimate business ventures.   This reputational harm is compounded by the fact that several critical allegations in the Complaint have been shown to be objectively false.[3]  Claimants' inability to defend themselves while the

---

[2] Claimants are prepared to provide the Court with unredacted witness statements and other exculpatory information on an *ex parte* basis, so this Court can evaluate for itself whether additional investigative time is merited.  Such an *ex parte* submission would be appropriate to protect the identities and safety of certain key defense witnesses, and to prevent disclosure to the Government of important defense strategies and exculpatory facts, the disclosure of which would prejudice Claimants' defense at trial.

[3] The Complaint was filed, as required by FED. R. CIV. P., SUPP. R. G(2)(a), with sworn verification by Agent Newhouse. But Claimants conclusively demonstrated in their MJOP, filed nine months ago, that multiple sworn allegations—including the overturned tax assessments upon which the Government hinges its entire quid pro quo theory—are false.

Given the Government's "duty of good faith and candor in dealing with the judiciary," *United States v. Associated Convalescent Enters, Inc*., 766 F.2d 1342, 1346 (9th Cir.

(Footnote Cont'd on Following Page)

7

stay is in place has led to (1) the closure of multiple bank accounts, (2) lost business opportunities (including competitors referring to this lawsuit to gain strategic competitive advantages by discouraging companies from doing business with Claimants), (3) enhanced scrutiny, diligence responses and more frequent reporting to numerous multinational business partners, and (4) increased financial, professional and legal fees to keep their operations afloat.  Wernick Decl. ¶¶ 18–19.

*Second,* the Government's lengthy investigation has (in multiple ways) impeded the effective marketing of the defendant Property and devalued it to Claimants' detriment.  As noted in Claimants' previous filings, Claimants authorized counsel to attempt to engage directly with the Government after learning that the FBI had been contacting Claimants' associates about their ownership of the Property.  Claimants wished to sell the Property and—knowing that the false and politically motivated attacks on them in Armenia were likely the reason for the inquiries—wanted to ensure that the Government had the benefit of complete information about this case before the Property was listed for sale.  The Government filed its May 2022 Complaint, regardless, without any effort to engage with Claimants.[4]  Then, after the Complaint was filed, Claimants worked with the Government to draft an agreed stipulation to maximize the ability to sell the Property at a reasonable, market price, and this Court authorized a sale along the agreed-upon terms in August 2022.  ECF No. 36.  Claimants were able to continue using their realtor, who had received multiple competitive offers

---

1985), we are hopeful that the Government has acknowledged and since corrected the false and misleading allegations in its *ex parte* submissions, and that further exculpatory information has also been provided.  Unfortunately, no public efforts have been taken by the Government to correct the existing Verified Complaint, which, despite its falsity, remains the publicly sworn position of the Government and its lead FBI agent.

[4] Claimants documented the multiple attempts that were made to try and engage with the Government to proactively and transparently provide information to before the Complaint was unfortunately filed.  ECF No. 44 at 3–4; No. 44-1 at 1–4.

from several qualified buyers, and Claimants had a contract for sale of the Property, which the Government approved, but which unfortunately fell through.  Wernick Decl. ¶ 14.  The Government took over marketing of the Property in November 2022.

Unfortunately, the Government's lagging investigation and lackluster marketing of the Property has prejudiced Claimants by preventing them from selling it at its true market value.  To date, the Government has fielded no real offers that are anywhere close to the agreed-upon appraisal price of the Property, and there have been complaints about the poor marketing of the Property. Wernick Decl. ¶¶ 15–16.  Under the circumstances, this Court should lift the stay and force the case to move forward in order to take actions that are "necessary to preserve the value of the property."  18 U.S.C. § 981(g)(6).

*Third*, despite being barred from fully enjoying their rights and benefits as the lawful owners of the defendant Property, Claimants unfairly have shouldered the burden for all of the costs, including substantial property taxes and necessary repairs. Wernick Decl. ¶ 17.  Beyond these fees, Claimants have incurred substantial expenses for legal counsel to counter the Government's charges.  These combined direct costs exceed $1 million since the Complaint was filed and do not account for substantial indirect costs associated with the ongoing stay of the Government's action.   An extension of the stay will perpetuate these financial costs and harms to Claimants, and the Court should require the Government to make a compelling showing that, even after several years of investigation, the Government still needs even more time to build its case.

*Fourth*, the longer the stay remains in place, the more difficult it will be for Claimants to put forth an effective defense.  *See Mendoza v. City of Los Angeles*, 2022 WL 17401793, at *5 (C.D. Cal. June 23, 2022) ("The Court declines to let this case languish on its docket at the risk of witnesses' memory fading and/or witnesses relocating and becoming unavailable."); *In re Mid-Atl. Toyota Antitrust Litig.*, 92

F.R.D. 358, 359 (D. Md. 1981) ("Witnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time on end.").  Claimants have already learned that one key defense witness has died since the initiation of the Government's investigation, and the passage of time increases the likelihood that other key testimony will be lost as witnesses age and their recollections fade.  Wernick Decl. ¶ 10.  Record-retention laws in the United States and Armenia and procedures have also resulted in many exculpatory bank and business records no longer existing or becoming increasingly expensive and difficult to recover. *Id.*  Political forces in Armenia may also threaten the willingness or ability of certain witnesses to provide testimony, and the ongoing Armenian military conflict with Azerbaijan could further inhibit access to defense witnesses and other investigative efforts.

These issues illuminate not only the severe prejudice inflicted by continuing the stay, but also, potential violations of Claimants' constitutional rights as the Government's four-year-old investigation continues.  The Supreme Court has noted that due process concerns stemming from inaction in a forfeiture case "mirrors the concern of undue delay encompassed in the right to a speedy trial."  *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564 (1983).[5]

---

[5] While *$8,850.00* focused on the "narrow" due process issue of delays between seizure and filing suit, "the flexible due process principles articulated by the [*$8,850.00*] court easily are expanded to cover situations in which the government unfairly delays a case from coming to trial." *United States v. $307,970.00, in U.S. Currency*, 156 F. Supp. 3d 708, 716–17 (E.D.N.C. 2016) (quotation marks omitted).  "To require prompt filing of a forfeiture action but allow indefinite postponement of the trial would reduce the filing requirement to a nullity." *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1163 (2d Cir. 1986).

## V.     IF THE STAY IS TO REMAIN IN PLACE, IT SHOULD BE MODIFIED

The prejudice suffered by Claimants is more acutely felt because of the thin reed on which the Government's Complaint is based.  The Court should, at a minimum, modify the stay to allow Claimants to refile and be heard on their previously-filed MJOP.  18 U.S.C. § 981(g) only allows for stays in the context of "*civil discovery*" that "will adversely affect the ability of the Government to conduct a related criminal investigation." (emphasis added).  Because the MJOP is considered on the pleadings and judicially noticeable evidence, no "civil discovery" is necessary.  Indeed, the Government even endorsed adjudication of the originally-filed MJOP in their response briefing. Government's MPA iso Mtn. Stay, ECF No. 37, at 1 n.1.  If adjudication of the merits of the Government's case is to be held up for another six months, it should at least be based on a viable Complaint, especially when a 15-page, bare-bones Complaint like the one here seeks to forfeit and infringe upon Claimants' full ownership and control of a $53 million property.

Further, if the stay on civil discovery should continue, Claimants respectfully request that the Court incentivize the Government to take action by setting an end date on the stay after 180 additional days.  Four years of investigations is more than sufficient time to verify the credibility of the Armenian referral, especially in light of the Government's easy access to foreign evidence and the substantial volume of exculpatory evidence that exists in this case.  If, after another 180 days has passed, the Government believes that even more time is needed, then the Government can move again to extend the stay, but this Court should require the Government to demonstrate actual investigative progress, as well as an accounting of exculpatory evidence that potentially weakens the Government's theory of the case.  *C.f. $600,980.00 in U.S. Currency*, 2022 WL 18397522 at *2 (ordering the Government "to provide more fulsome information in its forthcoming status [report]" to help determine whether a stay continues to be required); *$177,844.68 in U.S. Currency*, 2014 WL 4071054 at *9

11

(granting a 90-day stay, but requiring the Government to show "either that criminal charges have been filed . . . or that the filing of such charges is imminent" to receive further extension).

Given the dilatory pace of the investigation, and the substantial contrary evidence already available to the Government, Claimants respectfully request that this Court also require: more frequent updates from the Government; that the Government advise the Court of all exculpatory information in the Government's possession as part of its *ex parte* submissions; that the Government publicly correct the objectively false and misleading allegations that are currently in the Government's Complaint.

## VI.   CONCLUSION

This Court stated that it may "reassess the need for terminating the stay if the criminal prosecution extends for an excessive period."  Stay Order at 6.  Claimants respectfully submit that such a reassessment is now needed, given the significant prejudice Claimants continue to suffer and the ample time that the Government has had to complete its investigation.  Under the unique circumstances of this case, Claimants respectfully request that this Court hold a status conference to allow the parties to present their respective positions, and that this Court lift or modify the stay of this case to mitigate the continued and unfair prejudice to the Claimants.

Dated: May 3, 2023                          VINSON & ELKINS LLP

                                            By:  /s/ *Ephraim Wernick*
                                                 Ephraim Wernick
                                                 Christopher W. James
                                                 Peter T. Thomas

                                            *Attorneys for Claimants Artyom Khachatryan,*
                                            *Gurgen Khachatryan, and WRH, Inc.*