BRENT S. WIBLE, Chief
D. HUNTER SMITH, Trial Attorney
Money Laundering and Asset Recovery Section
Criminal Division
United States Department of Justice
     1400 New York Avenue NW
     Washington, DC 20005
     Telephone: (202) 355-5705
     Email: David.H.Smith@usdoj.gov

E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorney
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-1785
     Facsimile: (213) 894-0142
     E-mail: Maxwell.Coll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>                  v.<br><br>REAL PROPERTY IN LOS ANGELES, CALIFORNIA,<br><br>            Defendant. | No. 2:22-cv-02902-JLS-PDx<br><br>GOVERNMENT'S OPPOSITION TO CLAIMANTS' MOTION TO LIFT THE STAY<br><br>**[REDACTED Version of Document Proposed to be Filed Under Seal]**<br><br>Date:           July 28, 2023<br>Time:           10:30 a.m.<br>Courtroom:   8A, the Honorable<br>                    Josephine L. Staton |

i

**TABLE OF CONTENTS**

I.   INTRODUCTION.....................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND...............................1

III. LEGAL STANDARD..................................................6

IV.  ARGUMENT........................................................7

     A.   The Stay Should Remain in Place...........................7

     B.   Claimants' Arguments to Lift the Stay Lack Merit..........9

          1.   The "Investigation Period" Has Not Been
               "Excessive".........................................9

          2.   The Motion's Claims of "Severe Prejudice" Are
               Unsupported........................................10

     C.   The Court Should Not Modify the Existing Stay...........12

V.   CONCLUSION.....................................................14

ii

TABLE OF AUTHORITIES

**CASES**                                                              **PAGE(S)**

Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines,
     925 F.2d 1193 (9th Cir. 1991) ..................................... 8

United States v. $144,001 in U.S. Currency,
     2010 WL 1838660 (N.D. Cal. May 3, 2010) ....................... 7, 8

United States v. $177,844.68 in U.S. Currency,
     2014 WL 4071054 (D. Nev. Aug. 15, 2014) ...................... 11

United States v. $399,000.00 in U.S. Currency,
     2022 WL 2284931 (C.D. Cal. Mar. 8, 2022) ..................... 6

United States v. $600,980.00 in U.S. Currency,
     2022 WL 18397522 (C.D. Cal. Nov. 15, 2022) ............... 6, 8, 11

United States v. Approximately $1.67 Million in U.S. Currency, Stock &
Other Valuable Assets,
     513 F.3d 991 (9th Cir. 2008) ..................................... 10

United States v. Real Property Located at 6415 N. Harrison Ave.,
     2012 WL 4364076 (E.D. Cal. Sep. 21, 2012) ........................ 9

United States v. "The Wolf of Wall Street" Motion Picture,
     2017 WL 8230168 (C.D. Cal. Sept. 13, 2017) ................... 8, 12

United States v. Various Gold, Silver & Coins,
     2012 WL 13055591 (D. Or. July 26, 2012) .......................... 6

**Statutes**

18 U.S.C. § 981(g) .............................................. 5, 7

18 U.S.C. § 981(g)(1) ........................................ 6, 7, 8

18 U.S.C. § 981(g)(4) ........................................ 6, 7, 8

iii

## I.    INTRODUCTION

Claimants' Motion to Lift or Modify the Stay (DE 59) (the "Motion") is a transparent attempt to relitigate the stay order that this Court entered only six months earlier.  The Court stayed this case "pending resolution of the related criminal investigation and case," DE 52 at 7, and neither the United States' criminal investigation nor the Armenian criminal prosecutions have been resolved.  Indeed, Claimants moved to lift the stay just two weeks after the government's *first* status report detailing its ongoing international investigation.  At the same time, Claimants have taken steps to block that investigation by filing legal pleadings in a foreign jurisdiction and have rejected a significant offer on the Los Angeles mansion.  Claimants should not be permitted to slow down the government's investigation, while simultaneously complaining of a slow pace here.

The Court should deny Claimants' effort to short-circuit the government's criminal investigation and to obtain back-door discovery into pending Armenian criminal prosecutions, just as the Court did before (see DE 52).  The Motion should be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

**A.  Underlying Facts.**  As set forth in the Verified Complaint for Forfeiture In Rem, DE 1, in 2011, Sedrak Arustamyan ("Arustamyan"), an Armenian businessman wired approximately $14,400,000 to the United States to purchase the defendant luxury residence in Holmby Hills (the "Veto Estate") on behalf of Gurgen and Artyom.[1]  Gurgen's and Artyom's father, Gagik ("Gagik"), was in 2011 (and remained until 2016) the

---

[1] Later, Gurgen and Artyom transferred ownership of the Veto Estate to what is now WRH, Inc., a corporation that they wholly own.

1

highest-ranking Armenian public official in charge of tax collection. After the purchase, Gurgen and Artyom rebuilt the property, with suites designated for members of their family and the largest suite intended for Gagik and his wife.   Instead (though Claimants contest these allegations), the loans were shams, were not, and were not ever intended to be, repaid, and were instead for covers for bribes to purchase illegal tax treatment in favor of business affiliated with Arustamyan. See also DE 45 at 3-7 (Plaintiff's Opposition to the Motion for Judgement on the Pleadings); see also DE 40 (Newhouse In Camera Declaration); DE 64 (In Camera Supplemental Status Report filed contemporaneously herewith).

In April 2020, Armenian prosecutors charged Claimants Gurgen and Artyom with receiving approximately $22,400,000 of bribes from Arustamyan on behalf of their father Gagik (in addition to other offenses); Gagik and Arustamyan were also charged in connection with the bribes.   The charged bribes included the funds that Arustamyan sent to the United States to purchase the defendant property.   Rather than mount a defense to the Armenian charges, Gurgen and Artyom fled the country.   The Armenian cases against them remain pending.[2]

No later than 2021, Claimants took steps to sell the Veto Estate. See DE 59-1 at ¶ 6.   In April 2022, Claimants listed the property for sale on a Multiple Listing Service.   DE 1 at ¶ 54.   On May 2, 2022, the government filed the instant civil forfeiture suit. DE 1.   The government also immediately proposed an interlocutory sale stipulation to permit the sale that Claimants intended.   Claimants agreed to the stipulation, and, on August 3, 2022, the Court approved it.   See DE 36

---

[2] Gurgen remains a fugitive.   Though Artyom no longer remains a fugitive, he was for several years after the charges were filed.

(the "ISS").   Though the government filed a lis pendens on the Veto Estate, the government has not seized or imposed any other restraint on Claimants' use of the property.

**B. Marketing Of Veto Estate.**  The ISS provided both the government and WRH with the right to reject any proposed sale as "below fair market value" and provided that disputes as to fair market value may be submitted to the Court.  ISS at ¶ 9.  WRH also agreed to "secure and maintain the Property in substantially the same condition as it was on the date of the filing of this action."  ISS at ¶ 11.

Under the ISS, the broker that Claimants had already hired would continue to market the property until October 7, 2022.  ISS at ¶ 5. If a sale contract had not been signed by that time, Claimants and the government agreed that the United States Marshal Service ("USMS") would market the property with a broker of its choosing.  ISS at ¶ 5.

WRH's broker did not obtain a viable offer to purchase the Veto Estate by October 7, 2022.[3]  After the government agreed--at WRH's request--to extend the time for him to continue marketing the property, the USMS exercised its right under the stipulation to take over marketing of the property on or around November 14, 2022.



---
[3]



Claimants filed the present motion on May 3, 2023, in which they charged the government with "lackluster marketing" of the property.  DE 59 at 9.

Subsequent discussions remain ongoing and it remains

*(footnote cont'd on next page)*

4

possible that a transaction will be concluded with the consent of all parties.

**C. The Court's Entry Of A Stay.**   On July 29, 2022, Claimants served on the government requests for production that sought, among other things, (1) all documents or communications (including mutual legal assistance treaty requests) that the government had exchanged with any foreign government or other entity regarding this case, (2) all grand jury subpoena returns, (3) FD-302(s) and other witness statements for all witnesses that the Government had interviewed and (4) all documents that tend to support or refute the allegations in the Complaint.  <u>See</u> DE 37-2 (copy of the requests for production).

On September 23, 2022, the government objected to these requests for production and moved for a stay under 18 U.S.C. § 981(g) and this Court's inherent power.  On October 18, 2022, this Court granted the government's motion and entered a stay "pending resolution of the related criminal investigation and case."  DE 52 at 7.  It ordered the government to file <u>in camera</u> status reports every 180 days until the stay is lifted.  DE 52 at 7.  The government filed its first status report on April 19, 2023.  DE 58.  ***Two weeks after the first status report***, Claimants moved to lift the stay.  DE 59.

As described in the <u>in camera</u> status report and the <u>in camera</u> supplemental status report filed herewith, both the Armenian criminal prosecutions and the United States criminal investigation remain ongoing.  At the same time, Claimants have taken efforts to forestall the investigation.  For example, Claimants retained counsel in Austria and filed pleadings objecting to all the United States's efforts to

collect evidence from that country, and asked that any evidence already collected be destroyed.  Smith Decl. ¶ 2.

## III. LEGAL STANDARD

Pursuant to the Civil Asset Forfeiture Reform Act ("CAFRA"), a "court shall stay" a civil forfeiture proceeding if it determines "that civil discovery will adversely affect [1] the ability of the Government to conduct a related criminal investigation or [2] the prosecution of a related criminal case." 18 U.S.C. § 981(g)(1). Congress provided for CAFRA stays to remain in place so long as there was an "actual prosecution or investigation in progress" that would be adversely affected by civil discovery. 18 U.S.C. § 981(g)(4); see id. (defining the terms "related criminal case" and "related criminal investigation" to mean "an actual prosecution or investigation in progress at the time at which the request for the stay, or any subsequent motion to lift the stay is made" (emphasis added)); see also United States v. Various Gold, Silver & Coins, No. 3:11-CV-01179-SI, 2012 WL 13055591, at *1 (D. Or. July 26, 2012) ("Courts have applied this statute broadly[.]")

"The statute requires no particularized showing of prejudice or harm," United States v. $600,980.00 in U.S. Currency, No. 221CV06965RGKMAR, 2022 WL 18397522, at *2 (C.D. Cal. Nov. 15, 2022) ("$600,980.00 II"), nor is there "any requirement that the Government show good cause," United States v. $399,000.00 in U.S. Currency, No. 221CV06966RGKMAR, 2022 WL 2284931, at *2 (C.D. Cal. Mar. 8, 2022); see DE 52 at 4 (this Court's ruling to the same effect).  Instead, "all the Court need determine is whether civil discovery will likely interfere with the criminal investigation." DE 52 at 4 (quoting United States v. $600,980.00 in U.S. Currency, No. 221CV06965RGKMAR, 2022 WL 2284934, at *2 (C.D. Cal. Mar. 8, 2022) ("$600,980.00 I")).

**IV.  ARGUMENT**

This Court previously entered a stay "pending resolution of the related criminal investigation and case," because "the statute's plain language mandates that the Government's request for a stay be granted." DE 52 at 6-7. There is no reason to revisit that ruling.

**A.  The Stay Should Remain in Place**

As this Court held, "[t]he in camera declaration of FBI Special Agent Mark Newhouse clearly demonstrates that the Government is engaged in an ongoing investigation of criminal conduct related to this action and that civil discovery would likely jeopardize that investigation." Id. at 6.  The in camera status report filed on April 19, 2023, and the supplemental in camera status report filed contemporaneously herewith make clear that that investigation remains "[a]n actual . . . investigation in progress." 18 U.S.C. § 981(g)(4).  And, just as this Court found before, civil discovery would "likely jeopardize that investigation" by "subjecting the Government to broader and earlier discovery than would occur in a criminal proceeding." DE 52 at 6.  See also DE 40 (Newhouse In Camera Declaration further explaining harm to criminal investigation from civil discovery).  "In such circumstances," as this Court found, "the statute's plain language mandates that the Government's request for a stay [remain] granted."  DE 52 at 6.

Further, the Armenian criminal prosecutions of Claimants Gurgen and Artyom--as well as of their father Gagik and their associate Arustamyan--remain pending.  As previously explained, see DE 37 at 10-11, DE 49 at 7-9, those prosecutions are also an independent basis for a stay, either under the statute, see 18 U.S.C. § 981(g) (stay mandatory when civil discovery "will adversely affect . . . the prosecution of a related criminal case"); United States v. Approximately $144,001 in

7

U.S. Currency, No. C 09-04182 JSW, 2010 WL 1838660, at *2 (N.D. Cal. May 3, 2010), or under the Court's inherent power, see Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines, 925 F.2d 1193, 1195 (9th Cir. 1991). See also United States v. "The Wolf of Wall Street" Motion Picture, No. CV165362DSFPLAX, 2017 WL 8230168, at *1 (C.D. Cal. Sept. 13, 2017) (staying civil forfeiture case because of "the complex nature of the alleged crimes and the sensitive political and diplomatic issues involved").

Claimants do not dispute that a criminal investigation is under way in the United States or that several criminal prosecutions are under way in Armenia. Nor do Claimants seriously dispute that those investigations and prosecutions would be "adversely affected" by civil discovery. 18 U.S.C. § 981(g)(1). At most, they make the bald assertion that the prosecutions and investigations "cannot be adversely affected" by civil discovery because there is no wrongdoing to investigate or prosecute. DE 59 at 10. But nothing in CAFRA makes stays depend on claimants' assessments of the relative merits of ongoing investigations or prosecutions, much less requires courts to make advance determinations about incomplete investigations just to rule on a motion to stay. Instead, "all the Court need determine is whether civil discovery will likely interfere with the criminal investigation." DE 52 at 4 (quoting "$600,980.00 I, 2022 WL 2284934, at *2). As the Court previously determined, it would.[6]

---

[6] In any event, as the Newhouse Declaration and the government's in camera status reports make clear, Claimants' suppositions about the evidence that Armenian and United States authorities have collected are untrue.

8

**B.   Claimants' Arguments to Lift the Stay Lack Merit**

Rather than addressing the statutory standard, Claimants argue that the stay should be lifted because (1) the "investigation period" has been "excessive," DE 59 at 4-7; and (2) they have suffered "severe prejudice" from the stay. Id. 10; see id. at 7-10. These arguments do not address the statutory standard for a stay of a forfeiture proceeding and lack merit even on their own terms.

**1.   The "Investigation Period" Has Not Been "Excessive"**

Claimants argue that the "investigation period," which according to Claimants began in 2019, has been "excessive" and should now end. DE 59 at 4-5. But this civil forfeiture case was filed last year, and stayed only six months before Claimants moved to lift the stay. However long the "investigation period" may have been, the stay has been comparatively short. Indeed, the Court entered a stay "pending resolution of the related criminal investigation and case" and ordered the government to file status reports every 180 days. DE 52 at 7.

Instead, "the presence of related criminal proceedings has long been considered a justification for a lengthy delay in forfeiture proceedings," United States v. Real Property Located at 6415 N. Harrison Ave., 2012 WL 4364076, *5 (E.D. Cal. Sep. 21, 2012), particularly when those proceedings involve inherently time-consuming international financial investigations, see United States v. $37,564,565.25 et al., No. 1:18-cv-2795 (D.D.C.) (stay remains in place nearly five years after government had seized nearly $100 million); United States v. £22 million in British pounds, No. 1:15-cv-01018-RJL (D.D.C.) (stay remains in place eight years after government had frozen approximately £22 million); United States v. All Assets Held in Raymond James & Associates, Inc., No. 1:19-cv-00377-WFK (EDNY) (stay in place

9

for three-and-a-half years, which is five years after government seized approximately $4.9 million); *see also* <u>United States v. Approximately</u> <u>$1.67 Million in U.S. Currency, Stock & Other Valuable Assets</u>, 513 F.3d 991, 1001 (9th Cir. 2008) ("five-year delay between seizing the funds . . . and commencing the action" did not violate due process).[7]

What is more, many of the supposed "delays" are attributable to Claimants' own conduct. For example, despite claiming that they are fully "cooperating" (DE 59 at 6) with the United States investigation, Claimants have filed pleadings in a foreign jurisdiction opposing the government's efforts to collect evidence. See Smith Decl. ¶ 2. Having worked to stall the investigation, Claimants should hardly be heard to complain that it is not proceeding fast enough. Nor should this Court allow itself to become a backdoor for intrusive discovery into ongoing foreign prosecutions, particularly while Gurgen remains a fugitive from those proceedings. <u>See</u> DE 37-2 at 5 (Claimants seek production of "all documents the Government has provided to or received from Armenian law enforcement relating to this matter").

### 2. The Motion's Claims of "Severe Prejudice" Are Unsupported

Claimants' account of the "severe prejudice," DE 59 at 10, that the stay has caused them is not a basis to lift the stay and is vastly overstated, in any event.

First, the stay (and the government's civil forfeiture case more generally) have not deprived defendants of their claimed property rights for one day. Unlike in the cases that Claimants cite, the

---

[7] Further, unlike in each of the cited cases, the government has not seized or otherwise deprived Claimants' of use of the defendant property. See *infra*.

10

government has not seized the defendant property.  See $600,980.00 II,
2022 WL 18397522, at *1-*2 (describing due process concerns where
property is "seized" and "held without an opportunity to contest the
seizure"); United States v. $177,844.68 in U.S. Currency, No. 2:13-CV-
100-JCM-GWF, 2014 WL 4071054, at *9 (D. Nev. Aug. 15, 2014) (concerning
funds "seized from the Claimants' bank accounts . . . over two years
ago"); DE 59 at 4 (relying on these cases).  To the contrary, as this
Court previously observed, "Claimants are still able to use and access
the [Mansion]."   DE 52 6-7 (quotation marks omitted).   Further,
Claimants "were marketing the property for sale when the Government
filed the complaint," and the government agreed to an interlocutory
sale stipulation that would permit that marketing to continue.  Id. at
7.

Claimants now express dissatisfaction with the ISS and, in
particular, their agreement that the government's real estate team
would assume control of marketing efforts if their own broker was
unable to sell the property by October, 2022.  See DE 59 at 9.  But
Claimants' second thoughts about the agreement they reached in the sale
stipulation are no basis to lift the stay.  In any event, Claimants'
hearsay insinuations and accusations are unfounded: ███████████████

███   ████████   ███   ████████   ███████████████████   ██████   ███   ███
██████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████████
██████████████   ██████████████████████████████████████████████████████████
██████ ██████ █████ █████ ███████ ███████ █████ ████████ ██████ ██████ █████
███████ ████ █████ ████ █████ ██████ █████ ████ █ █████ ██████ ████ █████
████████████   ████████████████████████████████████████████████████████████

11

1 ██ ██ ██ ██ ██ ██ ██ ██ ██ ██ ██ ██ ██

2 ████████████████   None of this is a basis to lift a stay.

3     Claimants' claims of "reputational harm" and harm to "business

4 relationships" are likewise not a basis to lift the stay. DE 59 at 2;

5 see id. at 7-8.  Before this case was filed (or stayed), Claimants

6 faced criminal charges regarding the very same transactions in Armenia,

7 the jurisdiction where Claimants' "legitimate business operations" (id.

8 at 2) are located and in which Claimants resided. It is hard to believe

9 that a stay in this case could have harmed their businesses and

10 reputations any more than criminal charges in the jurisdiction in which

11 they principally lived and did business.  In any event, Claimants cite

12 no case holding that reputational harm is a basis to lift a stay: if

13 it were, then few cases indeed would be subject to a mandatory stay

14 because all civil forfeiture complaints, of necessity, allege

15 wrongdoing.

16

17     Finally, Claimants' argument that delay will make it "more

18 difficult" to put forth an effective defense, DE 59 at 9, rings hollow.

19 "To the extent that the stay would delay resolution of this case, that

20 is an issue inherent in any stay and does not weigh against [a stay

21 here] here."  DE 52 at 7.  See "The Wolf of Wall Street" Motion Picture,

22 2017 WL 8230168, at *1 ("The reason for the delay is well-founded and

23 codified as important by Congress").  In any event, the government,

24 which bears the ultimate burden of proof, faces at least an equal

25 measure of risk from fading memories and irretrievable documents.

26     C.    **The Court Should Not Modify the Existing Stay**

27     When the Court entered the stay, the Court denied Claimants'

28 request to require the government to file status reports more

frequently than every 180 days.  See DE 52 at 7 (court's order requiring

12

status reports every 180 days); DE 44 at 21-22 (Claimants' request that status reports be filed every 60 days); <u>see also</u> DE 49 at 12-13 (government's explanation why 180 days is appropriate). Claimants' Motion, filed only days after the government's first status report, now seeks to relitigate that ruling and asks that the Court require "more frequent updates" from the Government. DE 59 at 18. The Court should deny that request. Claimants do not even acknowledge this Court's prior ruling, much less explain why the Court should revisit it.

Claimants' other requests to modify the stay are equally unsupported. There is just as little reason to have the parties rebrief Claimants' motion for judgment on the pleadings as there was for the Court to decide it when it was briefed previously. Yet again, Claimants do not even acknowledge this Court's prior decision to stay that motion, <u>see</u> DE 52 at 7 (vacating hearing on that motion), much less explain why the Court should change its mind now. <u>See also</u> 18 U.S.C. § 981(g)(1) (providing for a stay of "the civil forfeiture <u>proceeding</u>," not just of discovery (emphasis added)).[8]

Nor should the Court modify the stay to require the Government to provide an "accounting" of all the evidence in its possession, including evidence that "weakens the Government's theory." DE 59 at 11. That kind of burdensome disclosure requirement would be completely unprecedented, would go beyond the discovery requirements even in an unstayed case (criminal or civil), and would only divert resources from

---

[8] Among other things, as the government noted before (<u>see</u> DE 49 at 12), if Claimants were to proceed with dispositive motions, then the government would be entitled to pursue discovery on standing, including seeking complete, non-evasive answers to the government's already-served special interrogatories. <u>See</u> Fed. R. Civ. P., Suppl. Rule G(6)(C).

13

the investigation that Claimants claim to want to hasten.   Claimants provide no justification to impose such an extraordinary requirement here.

**V.    CONCLUSION**

For foregoing reasons, Claimants' Motion should be denied.

Dated: July 7, 2023                         Respectfully submitted,

                                            BRENT WIBLE, Chief
                                            Money Laundering and Asset
                                            Recovery Section, Criminal
                                            Division
                                            United States Department of
                                            Justice

                                            _/s/ D. Hunter Smith_
                                            D. HUNTER SMITH, Trial Attorney

                                            E. MARTIN ESTRADA
                                            United States Attorney
                                            SCOTT M. GARRINGER
                                            Assistant United States Attorney
                                            Chief, Criminal Division
                                            JONATHAN GALATZAN
                                            Assistant United States Attorney
                                            Chief, Asset Forfeiture Section

                                            _/s/ Maxwell Coll_
                                            MAXWELL COLL
                                            Assistant United States Attorney

                                            Attorneys for Plaintiff
                                            UNITED STATES OF AMERICA

14